HAMMOND v. SAINI

[229 N.C. App. 359 (2013)]

## Conclusion

For the reasons stated above, we affirm the trial court's order dismissing plaintiffs' amended complaint.

AFFIRMED.

Judges McGEE and GEER concur.

———————

JUDY HAMMOND, Plaintiff

v.

SAIRA SAINI, M.D., CAROLINA PLASTIC SURGERY OF FAYETTEVILLE, P.C., VICTOR KUBIT, M.D., CUMBERLAND ANESTHESIA ASSOCIATES, P.A., WANDA UNTCH, JAMES BAX, and CUMBERLAND COUNTY HOSPITAL SYSTEM, INC., Defendants

No. COA12-1493

Filed 3 September 2013

1. **Appeal and Error—interlocutory orders and appeals—discovery order interlocutory—privilege asserted—substantial right**

   The Court of Appeals had jurisdiction to review contentions based on the medical review privilege and the work product privilege even though the trial court order compelling discovery was interlocutory. A substantial right is affected where a party asserts a privilege or immunity directly related to the matter to be disclosed and not frivolous or insubstantial.

2. **Appeal and Error—preservation of issues—argument waived—no objection**

   Defendants waived on appeal any argument concerning the production of documents allegedly protected by the attorney client privilege when they did not make any argument before the trial court concerning that privilege or make a specific argument on appeal regarding the applicability of the privilege, although they made a passing reference to the privilege in their brief.

3. **Discovery—production of documents—medical review privilege**

   The trial court did not err in an action arising from an operating room fire by granting plaintiff's motion to compel production of documents, despite defendants' claim of medical review privilege.

Defendants' contentions rested on the proposition that the hospital's Root Cause Analysis (RCA) Team was in fact a medical review committee, but defendants did not show that the RCA Team was part of the medical staff of the hospital, as required by N.C.G.S. § 131E-76(5)(b), or that the RCA Team was created by the governing board or medical staff of the hospital as required by N.C.G.S. § 131E-76(5)(c).

**4. Discovery—medical review privilege—statutory requirements**

Even if a Root Cause Analysis (RCA) Team that examined the cause of an operating room fire qualified as a medical review committee, defendants did not meet their burden of proving that the documents at issue were privileged under N.C.G.S. § 131E-95. The mere submission of an affidavit by the party asserting the medical review privilege does suffice; such affidavits must demonstrate that each of the statutory requirements have been met.

**5. Discovery—work product rule—hospital risk manager**

The question of whether notes about an operating room fire made by the hospital's risk manager were protected from disclosure by the work product rule was remanded where the record did not allow a determination of whether the notes were made in the ordinary course of business.

Appeal by defendants from orders entered 18 June 2012 by Judge Mary Ann Tally in Cumberland County Superior Court. Heard in the Court of Appeals 22 April 2013.

*McGuireWoods, LLP, by Patrick M. Meacham and Monica E. Webb, for defendants-appellants Cumberland County Hospital System, Inc., James Bax, and Wanda Untch.*

*Patterson Harkavy LLP, by Burton Craige and Narendra K. Ghosh; and Beaver, Holt, Sternlicht & Courie, P.A., by Mark A. Sternlicht, for plaintiff-appellee.*

DAVIS, Judge.

Cumberland County Hospital System, Inc. ("CCHS"), James Bax ("Bax"), and Wanda Untch ("Untch") (collectively "defendants") appeal from the trial court's orders compelling them to produce certain documents and divulge certain information in discovery to Judy Hammond ("plaintiff"). After careful review, we dismiss in part, affirm in part, and remand in part.

### Factual Background

On 28 September 2011, plaintiff filed a complaint in Cumberland County Superior Court against defendants as well as Carolina Plastic Surgery of Fayetteville, P.C.; Cumberland Anesthesia Associates, P.A.; Sairi Saini, M.D. ("Dr. Saini"); and Victor Kubit, M.D. ("Dr. Kubit"),[1] which contained the following allegations: Plaintiff reported to Cape Fear Valley Medical Center – operated by CCHS – on 17 September 2010 for a surgical procedure to remove a possible basal cell carcinoma from her face. Dr. Saini, who was employed by Carolina Plastic Surgery of Fayetteville, was responsible for performing the procedure, and Dr. Kubit, an anesthesiologist with Cumberland Anesthesia Associates, was responsible for administering anesthesia during the surgery. Bax and Untch, both registered nurse anesthetists employed by CCHS, were also involved in the provision of anesthesia to plaintiff during the surgery.

Plaintiff was given total intravenous anesthesia. During the operation, Kubit, Bax, and Untch administered supplemental oxygen to plaintiff through a face mask. Drapes were placed around plaintiff's face in such a way that oxygen escaping from the face mask built up under the drapes. When Dr. Saini used an electrocautery device to stop bleeding on plaintiff's face, the oxygen trapped under the drapes ignited and burned the drapes near plaintiff's face. Plaintiff sustained first and second degree burns on her face, head, neck, upper back, right hand, and tongue. Plaintiff also suffered a respiratory thermal injury, right bronchial edema, oral stomatitis, and nasal trauma, which left her with permanent injuries, including scarring.

An answer was filed on behalf of Bax, Untch, and CCHS, generally denying plaintiff's allegations of negligence. Plaintiff subsequently served separate sets of requests for production of documents and interrogatories on Bax, Untch, and CCHS. In their responses, each of them objected to certain aspects of these discovery requests on the grounds that they sought documents or information that was protected from disclosure based on the medical review privilege, the work product doctrine, and the attorney/client privilege. Based on these objections, defendants refused to produce the responsive documents or provide answers to the challenged interrogatories.

Plaintiff filed motions to compel discovery from defendants pursuant to Rule 37 of the North Carolina Rules of Civil Procedure. In

---

1. Defendants Carolina Plastic Surgery of Fayetteville, Cumberland Anesthesia Associates, Dr. Saini, and Dr. Kubit are not parties to this appeal.

opposing the motions, defendants' counsel filed an affidavit from Harold Maynard ("Maynard"), CCHS's risk manager, regarding the accident review process in existence at CCHS. Attached to the affidavit was a copy of an administrative policy of CCHS entitled "Sentinel Events and Root Cause Analysis" ("RCA Policy"). Defense counsel also submitted to the trial court a copy of a document labeled "Fire in Operating Room RCA" ("RCA Report") and copies of reports entitled "Risk Management Worksheets" ("RMWs").

After conducting an *in camera* review of the documents withheld by defendants, the trial court entered separate orders on 18 June 2012 granting plaintiff's motions to compel. Defendants appealed to this Court from these orders.

## Analysis

### I.   Appellate Jurisdiction

[1] As a preliminary matter, we must determine whether this Court possesses jurisdiction over defendants' appeal. Defendants' contentions on appeal can be divided into two categories. First, they argue that a segment of the documents and information requested by plaintiff are immune from discovery based on recognized privileges – namely, the medical review privilege, the work product doctrine, and the attorney/client privilege. Second, they contend that portions of plaintiff's discovery requests are overbroad and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 26 of the North Carolina Rules of Civil Procedure.

"An order compelling discovery is generally not immediately appealable because it is interlocutory and does not affect a substantial right that would be lost if the ruling were not reviewed before final judgment." *Sharpe v. Worland*, 351 N.C. 159, 163, 522 S.E.2d 577, 579 (1999). However, where a party asserts a privilege or immunity that directly relates to the matter to be disclosed pursuant to the interlocutory discovery order and the assertion of the privilege or immunity is not frivolous or insubstantial, the challenged order affects a substantial right and is thus immediately appealable. *K2 Asia Ventures v. Trota*, __ N.C. App. __, __, 717 S.E.2d 1, 4, *disc. review denied*, 365 N.C. 369, 719 S.E.2d 37 (2011).

For this reason, orders compelling discovery of materials purportedly protected by the medical review privilege or work product doctrine are immediately reviewable on appeal despite their interlocutory nature. *See, e.g., Woods v. Moses Cone Health Sys.*, 198 N.C. App. 120, 123-24, 678 S.E.2d 787, 790 (2009) (medical review privilege), *disc. review denied*,

363 N.C. 813, 693 S.E.2d 353 (2010); *Boyce & Isley, PLLC v. Cooper*, 195 N.C. App. 625, 636-37, 673 S.E.2d 694, 701-02 (work product doctrine), *disc. review denied*, 363 N.C. 651, 686 S.E.2d 512 (2009). Accordingly, this Court has jurisdiction to review defendants' contentions on appeal that are based on the medical review privilege and the work product doctrine.[2]

However, with regard to the arguments advanced by defendants based on overbreadth and relevancy, we do not possess jurisdiction to consider these contentions because they do not invoke a recognized privilege or immunity, and defendants have failed to otherwise show that they affect a substantial right. *See Wind v. City of Gastonia*, __ N.C. App. __, __, 738 S.E.2d 780, 782 (2013) (holding that only questions of whether requested files were shielded from discovery by statutory privilege were properly before appellate court); *K2 Asia Ventures*, __ N.C. App. at __, 717 S.E.2d at 4 (concluding that only portion of discovery order concerning attorney/client privilege and work product immunity was immediately appealable).

For these reasons, we lack jurisdiction to consider defendants' arguments regarding overbreadth and relevancy. Consequently, those portions of defendants' appeal are dismissed.

## II. Medical Review Privilege

[3] We now turn our attention to those issues on appeal that are properly before us. We begin by examining the applicability of North Carolina's medical review privilege codified in N.C. Gen. Stat. § 131E-95.

### A. Statutory Framework

As this Court has recognized, "N.C. Gen. Stat. § 131E–95, part of the Hospital Licensure Act, creates protection for medical review committees in civil actions against hospitals." *Woods*, 198 N.C. App. at 124, 678

---

2. [2] An interlocutory order compelling production of documents alleged to be protected from disclosure by the attorney/client privilege also affects a substantial right and is, therefore, immediately appealable. *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 23-24, 541 S.E.2d 782, 786, *cert. denied*, 353 N.C. 371, 547 S.E.2d 810 (2001). Here, although defendants make a passing reference to the attorney/client privilege in their brief, they make no specific argument regarding the applicability of this privilege as required under Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure. Moreover, our review of the transcript of the hearing on plaintiff's motions to compel reveals that defendants likewise did not make any argument before the trial court concerning the attorney/client privilege. As such, defendants have waived any argument based on the attorney/client privilege and, accordingly, we do not address its applicability in this opinion.

S.E.2d at 791. The privilege is set out in N.C. Gen. Stat. § 131E-95(b), which provides, in pertinent part, as follows:

> The proceedings of a medical review committee, the records and materials it produces and the materials it considers shall be confidential and not considered public records within the meaning of G.S. 132–1 . . . and shall not be subject to discovery or introduction into evidence in any civil action against a hospital . . . which results from matters which are the subject of evaluation and review by the committee.

N.C. Gen. Stat. § 131E-95(b) (2011).

"By its plain language, N.C. Gen. Stat. § 131E–95 creates three categories of information protected from discovery and admissibility at trial in a civil action: (1) proceedings of a medical review committee, (2) records and materials produced by a medical review committee, and (3) materials considered by a medical review committee." *Woods*, 198 N.C. App. at 126, 678 S.E.2d at 791-92. The statute goes on to state, however, that "information, documents, or records otherwise available are not immune from discovery or use in a civil action merely because they were presented during proceedings of the committee." N.C. Gen. Stat. § 131E-95(b).

N.C. Gen. Stat. § 131E-76 defines the term "[m]edical review committee" as

> any of the following committees formed for the purpose of evaluating the quality, cost of, or necessity for hospitalization or health care, including medical staff credentialing:
>
>> a.  A committee of a state or local professional society.
>>
>> b.  A committee of a medical staff of a hospital.
>>
>> c.  A committee of a hospital or hospital system, if created by the governing board or medical staff of the hospital or system or operating under written procedures adopted by the governing board or medical staff of the hospital or system.
>>
>> d.  A committee of a peer review corporation or organization.

N.C. Gen. Stat. § 131E-76(5)(a)-(d) (2011).

On appeal from a trial court's discovery order implicating the medical review privilege, this Court "review[s] de novo whether the requested documents are privileged under N.C. Gen. Stat. § 131E–95(b)." *Bryson v. Haywood Reg'l Med. Ctr.*, 204 N.C. App. 532, 535, 694 S.E.2d 416, 419, *disc. review denied*, 364 N.C. 602, 703 S.E.2d 158 (2010). In the present case, defendants, as the parties objecting to the disclosure of the materials on the basis of this privilege, bear the burden of establishing that plaintiff's discovery requests fall within the scope of the privilege. *Hayes v. Premier Living, Inc.*, 181 N.C. App. 747, 751, 641 S.E.2d 316, 318 (2007). Where, as here, the trial court's order does not contain findings of fact and conclusions of law but rather simply lists the documents that are discoverable, "it is presumed that the court on proper evidence found facts to support its [decision]." *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 27, 541 S.E.2d 782, 788 (citation and quotation marks omitted), *cert. denied*, 353 N.C. 371, 547 S.E.2d 810 (2001).[3]

### B. Application of Medical Review Privilege

Defendants contend that North Carolina's medical review privilege shields from discovery: (1) the RCA Report; (2) the RMWs; and (3) notes prepared by Maynard (CCHS's risk manager) after the operating room fire.

The RCA Report is a document consisting of multiple pages, containing a "Brief Overview" of the incident resulting in the operating room fire, a description of the post-fire review process undertaken by the hospital's Root Cause Analysis Team ("RCA Team"), and the RCA Team's ultimate recommendations based on that review process. The two RMWs appear to be computer-generated reports containing several different "Data" sections that include set fields for entering information. In the "General Event Data" section of both RMWs is a "Comments" field, each of which contains a general description of the events surrounding the operating room fire. As for Maynard's meeting notes, while they were not submitted to either the trial court or this Court for review, Maynard's affidavit describes them as "notes reflecting the discussions that occurred" in meetings he conducted regarding the fire.

Defendants invoke the medical review privilege by asserting that these documents are all connected with the investigation of the operating room fire by the RCA Team. All of defendants' contentions regarding the applicability of the medical review privilege hinge on the proposition

---

3. A trial court is not required to make findings of fact or conclusions of law where no request is made by the parties. *J.M. Dev. Grp. v. Glover*, 151 N.C. App. 584, 586, 566 S.E.2d 128, 130 (2002).

that CCHS's RCA Team is, in fact, a medical review committee for purposes of § 131E-76(5). If the RCA Team does not constitute a medical review committee as statutorily defined, then defendants' entire argument premised on the medical review privilege fails.

Defendants do not identify in their brief which specific prong(s) of § 131E-76(5) they believe the RCA Team falls under in order to qualify as a medical review committee. At oral argument, however, counsel for defendants stated that the RCA Team would qualify as a medical review committee under either subsection (b) or (c) of § 131E-76(5). After carefully reviewing the record, we conclude that defendants failed to meet their burden of showing that the RCA Team qualifies as a medical review committee for purposes of § 131E-76(5)(b) or (c).

In order to fall within § 131E-76(5)(b), defendants must show that (1) the RCA Team was comprised of the "medical staff of a hospital"; and (2) it was "formed for the purpose of evaluating the quality, cost of, or necessity for hospitalization or health care, including medical staff credentialing[.]" N.C. Gen. Stat. § 131E-76(5)(b).

Defendants have failed to meet even the first of these two prongs. Neither the RCA Report itself nor any other document presented by defendants identifies the members of the RCA Team as being part of the "medical staff of [CCHS]," as required by the statute. N.C. Gen. Stat. § 131E-76(5)(b). This omission is fatal to defendants' attempt to avail themselves of this provision of § 131E-76(5). Therefore, we conclude that defendants have not shown that the RCA Team constitutes a medical review committee under § 131E-76(5)(b).

In order to qualify as a medical review committee under § 131E-76(5)(c), the RCA Team must have been "created by the governing board or medical staff of the hospital or system or operating under written procedures adopted by the governing board or medical staff of the hospital or system." N.C. Gen. Stat. § 131E-76(5)(c). Maynard, in his affidavit, stated that "*[i]n general*, the peer review committees established to . . . prepare a root cause analysis are created by the medical staff and governing board of CCHS and operate under the [RCA Policy] . . . ." (Emphasis added.) The inherent ambiguity of the phrase "in general" leaves open the possibility that this sequence of events does not occur in every case. Notably absent from Maynard's affidavit is any statement that the RCA Team established *in this specific case* to review the operating room fire was created by the governing board or medical staff of CCHS or that the RCA Team operated under the RCA Policy. Nor does the RCA Report itself provide these details.

Similarly, defendants have also failed to establish that the RCA Policy was, in fact, "adopted by the governing board or medical staff of the hospital or system." N.C. Gen. Stat. § 131E-76(5)(c). The policy contains a notation that it was "approved by MN" – yet nothing in the record, including Maynard's affidavit, identifies who "MN" is. For all of these reasons, we believe that defendants failed to satisfy their burden of proving that the RCA Team constitutes a medical review committee for purposes of § 131E-76(5)(c).

**[4]** Even assuming *arguendo* that the RCA Team did qualify as a medical review committee, defendants would still have been required to "present . . . evidence tending to show that the disputed [documents] were (1) part of the [RCA Team]'s *proceedings*, (2) *produced* by the [RCA Team], or (3) *considered* by the [RCA Team] as required by" § 131E-95. *Hayes*, 181 N.C. App. at 752, 641 S.E.2d at 319 (emphasis in original). This Court has

> emphasize[d] that these are substantive, not formal, requirements. Thus, in order to determine whether the peer review privilege applies, a court must consider the circumstances surrounding the actual preparation and use of the disputed documents involved in each particular case. The title, description, or stated purpose attached to a document by its creator is not dispositive, nor can a party shield an otherwise available document from discovery merely by having it presented to or considered by a quality review committee.

*Id.* (footnote and emphasis omitted).

First, with respect to the RCA Report, defendants failed to submit any evidence revealing who produced or prepared it. While the document, on its cover page, identifies the event that is the subject of the report and the members of the team, it does not list its author. Defendants assert – pointing to Maynard's affidavit – that the RCA Team produced the report. Maynard's affidavit, however, states only that "[a] Root Cause Analysis Report *was prepared* . . . ." (Emphasis added.) It neither identifies the RCA Team members – individually or collectively – as the author of the RCA Report nor otherwise reveals the document's author.

Second, with respect to the computer-generated RMWs, defendants refer to these documents not as RMWs – the title provided on the face of the printouts – but rather as Quality Care Control Reports. Defendants maintain that these documents were prepared by Bax and Stephanie Emanuel ("Emanuel"), another nurse present in the operating room

during the fire, as part of the review process outlined in the RCA Policy. Although the RCA Policy does, in fact, identify Quality Care Control Reports as a "means" for initiating a review, the RCA Policy nowhere refers to RMWs, and nothing on the face of the RMWs indicates they actually are the Quality Care Control Reports contemplated by the RCA Policy.

Nor is it clear who prepared the RMWs. Both RMWs indicate on their face that the information contained in the comments section was entered by someone with the initials "RDE" – without any further indication of that person's identity. However, other sections of the RMWs suggest that they may have been completed by Emanuel and Bax – although it is not clear that this is, in fact, what occurred. Thus, the source of the information contained in the RMWs is unclear.

Finally, with respect to Maynard's meeting notes, these notes — as discussed below — may fall within the work product privilege. However, defendants have failed to meet their burden of establishing that these documents come within the purview of the medical review privilege.

In holding that defendants have failed to sustain their burden of proving that the three categories of documents at issue are privileged under § 131E-95, we find instructive our decision in *Bryson v. Haywood Reg'l Med. Ctr.*, 204 N.C. App. 532, 694 S.E.2d 416. In *Bryson*, the plaintiff – an internist – filed suit against the hospital where she had worked, claiming that her employment had been terminated in retaliation for her reporting "patient safety issues." *Id.* at 533-34, 694 S.E.2d at 418. During discovery, the hospital refused to respond to several of the plaintiff's interrogatories and document requests, "contending that they sought disclosure of the proceedings, records, and materials produced or considered by a medical review committee, which constituted information protected from discovery under N.C. Gen. Stat. § 131E–95(b)." *Id.* at 534, 694 S.E.2d at 418-19. In response to the plaintiff's motion to compel, the hospital submitted some – but not all – of the requested materials to the trial court for *in camera* review. *Id.*, 694 S.E.2d at 419. After reviewing the filed documents, the trial court entered an order protecting some documents from disclosure but directing others to be produced. *Id.*

On appeal, the hospital argued that certain internal documents ordered by the trial court to be produced were "privileged because they relate[d] to internal peer review investigations of patient charts requested by its Risk Management Department." *Id.* at 538, 694 S.E.2d at 421. In rejecting the hospital's contention, we observed that (1) "the documents on their face do not establish that they are privileged"; and

(2) the hospital "submitted no affidavits or other evidence to support its claim that the documents at issue were protected from discovery under N.C. Gen. Stat. § 131E–95(b)." *Id.* at 540, 694 S.E.2d at 422. Thus, because of the defendants' failure to provide sufficient evidence that the medical review privilege applied, *id.* at 538-39, 694 S.E.2d at 421, we were compelled to conclude that the hospital had "failed to meet its burden of showing that the documents f[e]ll into one of the three categories of privileged material under N.C. Gen. Stat. § 131E–95(b)," *id.* at 533, 694 S.E.2d at 418.

While, unlike in *Bryson*, defendants here did submit an affidavit in support of their argument based on the medical review privilege, the affidavit – as explained above – is insufficient to satisfy their burden of proving that the RCA Report, the RMWs, and Maynard's meeting notes are privileged under § 131E-95. The mere submission of affidavits by the party asserting the medical review privilege does not automatically mean that the privilege applies. Rather, such affidavits must demonstrate that each of the statutory requirements concerning the existence of the privilege have been met. Accordingly, defendants' arguments on this issue are overruled.[4]

### III. Work Product Doctrine

[5] Defendants also contend that the work product doctrine — set out in Rule 26(b)(3) of the North Carolina Rules of Civil Procedure — protects from disclosure notes made by Maynard regarding his discussions with Bax, Untch, and various other individuals possessing knowledge of the operating room fire as well as information about the content of these discussions.[5]

---

4. We note that defendants' brief contains a cursory, one-sentence argument that the documents at issue are also protected by the statutory privilege afforded to quality assurance committees in N.C. Gen. Stat. § 90-21.22A. This Court has recognized that the privilege applicable to quality assurance committees pursuant to § 90-21.22A "is functionally identical" to the privilege afforded to medical review committees under § 131E-95(b). *Armstrong v. Barnes*, 171 N.C. App. 287, 294, 614 S.E.2d 371, 376, *disc. review denied*, 360 N.C. 60, 621 S.E.2d 173 (2005). Accordingly, for the reasons already discussed, we conclude that defendants failed to sustain their burden of proving the applicability of § 90-21.22A as well.

5. In their brief, defendants mention in passing other discovery requests that they contend are protected by the work product doctrine. Defendants, however, fail to advance any specific argument regarding the applicability of the work product doctrine to the documents or information sought by these discovery requests. Defendants' failure to make a particularized argument regarding these specific discovery requests constitutes waiver of the issue on appeal. *See Latta v. Rainey*, 202 N.C. App. 587, 597, 689 S.E.2d 898, 908 (2010) (holding that where "defendant fail[ed] to make any specific argument in his brief" regarding certain issue, the issue was deemed abandoned on appeal).

The work product doctrine prohibits an adverse party from compelling "the discovery of documents and other tangible things that are 'prepared in anticipation of litigation' unless the party has a substantial need for those materials and cannot 'without undue hardship . . . obtain the substantial equivalent of the materials by other means.' " *Long v. Joyner*, 155 N.C. App. 129, 136, 574 S.E.2d 171, 176 (2002) (quoting N.C. R. Civ. P. 26(b)(3)), *disc. review denied*, 356 N.C. 673, 577 S.E.2d 624 (2003).

The party asserting the work product doctrine "bears the burden of showing (1) that the material consists of documents or tangible things, (2) which were prepared in anticipation of litigation or for trial, and (3) by or for another party or its representatives which may include an attorney, consultant, surety, indemnitor, insurer or agent." *Evans*, 142 N.C. App. at 29, 541 S.E.2d at 789 (citation and quotation marks omitted). Our Supreme Court has made clear, however, that "[m]aterials prepared in the ordinary course of business are not protected, nor does the protection extend to facts known by any party." *Willis v. Duke Power Co.*, 291 N.C. 19, 35, 229 S.E.2d 191, 201 (1976) (citing C. Wright & A. Miller, *Federal Practice and Procedure* § 2024, at 197 (1970)).

On appeal, we review "the trial court's application of the work product doctrine . . . under an abuse of discretion standard." *Evans*, 142 N.C. App. at 27, 541 S.E.2d at 788. Under this standard, a trial court's ruling may be reversed only upon a showing that it was manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision. *K2 Asia Ventures*, __ N.C. App. at __, 717 S.E.2d at 8 (citation and quotation marks omitted).

Defendants contend that Maynard's notes were prepared in anticipation of litigation, relying on the following statement in Maynard's affidavit:

> Because of the nature of the event (a fire in the operating room) and based on my experience as a Risk Manager, I immediately anticipated that litigation related to the event could result. In anticipation of litigation, I met with members of the plaintiff's family along with Jim Bax, CRNA, Dr. Saini, Dr. Kubit and Dr. Ruben Rivers to discuss the incident. I do not recall the date of that meeting. On September 20, 2010, in anticipation of litigation, I met with operating room personnel to discuss the event. This meeting occurred after my meeting with Ms. Hammond's family. After both of these meetings, and in anticipation of litigation, I prepared notes reflecting the discussions that occurred in the meetings.

Plaintiff counters, however, by arguing that the record is unclear whether Maynard actually prepared his notes in the ordinary course of business pursuant to CCHS's policies regarding "Quality Care Reports," "Reportable Incidents," and the "Patient Safety Response Team." If so, plaintiff contends, the notes would not qualify for work product immunity under Rule 26(b)(3) because they would have been prepared pursuant to hospital policy as a matter of course following incidents of this nature regardless of whether litigation was anticipated. *See Cook v. Wake County Hosp. Sys., Inc.*, 125 N.C. App. 618, 625, 482 S.E.2d 546, 551-52 (1997) (holding that hospital's accident report was not protected from discovery under Rule 26(b)(3) because "report would have been compiled, pursuant to the hospital's [risk management] policy, regardless of whether [plaintiff] intimated a desire to sue the hospital or whether litigation was ever anticipated by the hospital").

In this regard, we note that on at least two occasions, plaintiff requested that CCHS "[p]rovide all hospital bylaws, policies, rules, and/or procedures" relating to "the prevention of fire in operating rooms or during surgery . . . ." CCHS, however, never provided plaintiff with the responsive policies. Nor did CCHS submit them to the trial court for consideration – despite counsel's acknowledgment during oral arguments at this Court that having the requested policies would have been helpful to the trial court in determining whether Maynard's notes were prepared in anticipation of litigation as required by Rule 26(b)(3).

We are unable to determine on the record currently before us whether the trial court abused its discretion in compelling the production of Maynard's notes in the face of defendants' work product objection. Nor do we believe that the trial court was capable of making a determination of whether these notes were made in the ordinary course of the hospital's business without first examining the policies requested by plaintiff and determining whether the notes were made pursuant to hospital policy.

In concluding that a remand to the trial court is necessary on this issue, we are guided by our decision in *Diggs v. Novant Health, Inc.*, 177 N.C. App. 290, 628 S.E.2d 851 (2006), *disc. review denied*, 361 N.C. 426, 648 S.E.2d 208 (2007). In *Diggs*, the plaintiff suffered injuries during a surgical procedure and brought a medical malpractice claim against the hospital where the procedure was performed and against the members of the medical staff involved. *Id.* at 293-94, 628 S.E.2d at 854. During discovery, the plaintiff moved to compel the defendants to produce any documents "discuss[ing]" the plaintiff's injury or "any problems . . . during her . . . hospitalization.' " *Id.* at 310, 628 S.E.2d at 864.

The defendants objected to the disclosure, arguing that the responsive documents – contained in their " 'Risk Management file' " – "were protected from production by the attorney-client privilege and the work product doctrine . . . ." *Id.* After reviewing the documents *in camera*, the trial court denied in part and granted in part the plaintiff's motion to compel. *Id.* On appeal, the plaintiff contended that the trial court erred to the extent that it did not compel production of all the responsive documents.

This Court, after explaining that the work product doctrine shields from discovery only those "documents prepared 'in anticipation of litigation,' " reviewed the submitted documents in light of the hospital's "policy 'for the reporting of all unexpected events' " in order to determine whether the documents were prepared pursuant to that policy. *Id.* at 310-11, 628 S.E.2d at 864-65. However, after "carefully examin[ing] the documents and the information provided by [the] defendants regarding the nature of those documents[,]" *id.* at 310, 628 S.E.2d at 864, we were "unable to determine from the current record whether the documents at issue were generated pursuant to [the hospital's risk management] policy[,]" *id.* at 312, 628 S.E.2d at 865.

In particular, we observed that while "certain documents appear to correspond to the reports and summaries required by the hospital's policy," they were not specifically labeled as such, and thus we could not properly determine their status. *Id.* at 312, 628 S.E.2d at 865. Thus, we "remand[ed] to the trial court for further review as to these documents," emphasizing that the "defendants b[ore] the burden of demonstrating that the specified documents" were protected. *Id.*

Similarly, here, for the reasons set out above, we remand to the trial court for it to conduct an analysis of whether Maynard's notes are protected by the work product doctrine based on its review not only of Maynard's affidavit and the other evidentiary submissions in the record but also based on its review of the pertinent policies of CCHS. We note our concern regarding the inordinate amount of time defendants have taken to provide the requested policies to plaintiff. We direct the trial court, on remand, to issue a deadline for defendants to submit the policies at issue both to plaintiff and to the trial court. After the trial court has completed its review, it shall issue a new order containing its determination of whether the work product doctrine serves as a bar to the issuance of an order compelling the production of these meeting notes. We leave it to the trial court's discretion whether defendants should be required to also submit the notes themselves to the court for an *in camera* inspection.

Finally, we reject defendants' argument that the trial court abused its discretion in compelling them to respond to plaintiff's interrogatories despite their objections based on the work product doctrine. It is well established that the work product doctrine only applies to documents or other tangible things. *See Long*, 155 N.C. App. at 136-37, 574 S.E.2d at 176 (holding that "plaintiff's interrogatories did not violate Rule 26(b)(3)" because they "did not ask defendants for documents or tangible things").

### Conclusion

For the reasons stated above, we dismiss defendants' appeal in part, affirm the trial court's orders granting plaintiff's motions to compel in part, and vacate and remand that portion of the trial court's orders compelling the production of Maynard's meeting notes.

DISMISSED IN PART; AFFIRMED IN PART; REMANDED IN PART.

Chief Judge MARTIN and Judge BRYANT concur.