INMAN, Judge.
 

 *13
 
 This appeal presents the question of whether a party to litigation who engages her friend as an agent to participate in meetings with her attorney waives the protections of attorney-client communications and attorney work product for information arising from the meeting with her attorney and any work product created with the assistance of or shared with the agent as a result of those meetings. Based on our caselaw and the record here, the answer in this case is no.
 

 *736
 
 Defendant-Appellant Melissa Berens ("Defendant") appeals the interlocutory order denying her request for a protective order and her motion to quash Plaintiff-Appellee Michael Berens's ("Plaintiff's") subpoena
 
 duces tecum
 
 to Brooke Adams Healy ("Ms. Adams") compelling production of all documents relating to Ms. Adams's communications with Defendant; her communications with the Tom Bush Law Group ("the law firm"), the firm representing Defendant in her divorce; and her communications with any third party regarding "one or more members of the Berens family" and the legal proceedings that are the subject of the underlying divorce case. On appeal, Defendant argues that Plaintiff's subpoena to Ms. Adams seeks information protected by the attorney-client privilege and by the work product doctrine because Ms. Adams was Defendant's agent. Consequently, according to Defendant, Ms. Adams's presence during Defendant's meetings with her attorney did not waive the privileges nor did her involvement in the preparation of materials for litigation defeat the privileges. Defendant also contends that the subpoena exceeds the scope of Rule 45 of the North Carolina Rules of Civil Procedure.
 

 After careful review, we reverse the trial court's order and remand for proceedings consistent with this opinion.
 

 Factual and Procedural Background
 

 Plaintiff and Defendant were married on 23 September 1989 and separated on 20 July 2012. Six children were born of the marriage. On 4 June 2014, the trial court entered a temporary parenting arrangement order in an effort to best address each child's needs. In it, the court
 
 *14
 
 noted that there were several allegations that Plaintiff had engaged in physical confrontations with his children, including one incident in which Plaintiff grabbed one child and pushed him up against the wall. The court found that all the children have complained about "Plaintiff/Father acting weird or creepy," citing several instances of Plaintiff's inappropriate attempts at jokes or inappropriate behavior when he does not "get his way." The court also stated that when "[Plaintiff] does not get his way, he acts inappropriately, gets up and has 'mini explosions.' "
 

 The trial court held that it was in the children's best interest that Plaintiff have temporary supervised parenting only with the two youngest children and no contact with the four oldest children. The court calendared the permanent child custody trial to begin on 1 December 2014.
 

 Prior to the trial, on 9 September 2014, Plaintiff's counsel issued a subpoena
 
 duces tecum
 
 to Ms. Adams. Ms. Adams, an attorney who is now on inactive status with the North Carolina State Bar, is a friend of Defendant's and asserted in an affidavit that she had been "acting as a consultant/agent on behalf of [Defendant] and the Tom Bush Law Group, and acting in a supporting role for [Plaintiff]." Ms. Adams stated that her friendship with Defendant began prior to the current proceedings. As part of her role as a consultant and agent of Defendant, Ms. Adams stated that she had
 

 attended meetings with [Defendant] and her attorneys and [has] had access to various documents and tangible things, including ... emails and documents from and to [Defendant], her attorneys and/or other consultants/experts; correspondence and documents form and to [Defendant], her attorneys and/or other consultants/experts; notes of meetings between [Defendant] and her attorneys; drafts of Court pleadings; potential Court exhibits and documents; case law; statutes; settlements offers during mediation; and, [sic] strategy planning documents.
 

 Attached to her affidavit was a copy of the "Confidentiality Agreements and Acknowledgement of Receipt of Privileged Information" (the "confidentiality agreement") that Ms. Adams entered into with Defendant, identifying Ms. Adams as Defendant's agent, emphasizing that the privileged information she received would be used "solely for the purpose[ ] of settling or litigating" the divorce proceedings, and affirming the expectation that Ms. Adams's presence and involvement were "necessary for the protection of [Defendant's] interest" and the expectation that all communications would be "protected
 
 *737
 
 by the attorney-client privilege."
 
 *15
 
 The confidentiality agreement further provided:
 

 Client's Agent will limit her communications concerning the Client's litigation and dispute with her husband to Client and Client's attorneys and they [sic] will have no communication with anyone, including, but not limited to Wife's experts, accountants, consultants or attorneys, or other advisors and consultants unless Client's attorneys are present.
 

 Based on her assertion that she was Defendant's agent, Ms. Adams's counsel argued before the trial court that all documents and tangible things sought by Plaintiff's subpoena were protected by the attorney-client privilege and by work product immunity because Ms. Adams's presence in a "support role, to be a consultant, a representative" did not destroy the privilege or immunity. Plaintiff's counsel disagreed, arguing that Ms. Adams was engaged in the "unauthorized practice of law" and that the law firm had "assisted" her in that role.
 

 The trial court denied Defendant's and Ms. Adams's motions on 16 November 2014, finding, in pertinent part, that:
 

 19. Defendant/Mother's Motions and Ms. Adams'[s] Motions collectively assert that Ms. Adams has been functioning as a consultant and agent of Defendant/Mother and of the Tom Bush Law Group in this litigation. Ms. Adams states that she has attended meetings with Defendant/Mother and her attorneys, reviewed pleadings, emails, documents, case law, statutes etc.
 

 ...
 

 21. Ms. Adams is not an employee of the Tom Bush Law Group, nor has she been retained by the Tom Bush Law Group in this litigation.
 

 22. In truth, Ms. Adams is a good friend of Defendant/Mother and Ms. Adams is helping Defendant/Mother out in this litigation.
 

 23. The Agreement executed by Ms. Adams and Defendant/Mother holds no weight in this litigation.
 

 24. This Court cannot find that any attorney-client privilege or work product immunity exists with respect to the relationship between Ms. Adams and Defendant/Mother and the Tom Bush Law Group.
 

 *16
 
 25. There is no "good friend" exception to the attorney-client privilege or work product immunity warranting entry of an order quashing the Subpoena or protective order relieving Ms. Adams of her obligation to the comply with the Subpoena.
 

 26. One could, argue that Ms. Adams is practicing law if she wishes to utilize either the attorney-client privilege or work product immunity. The Court will not focus on this argument or consider it since Ms. Adams is simply viewed as a good friend of Defendant/Mother.
 

 The trial court concluded in pertinent part that:
 

 2. The Agreement executed by Ms. Adams and Defendant/Mother holds no weight in this litigation.
 

 ...
 

 4. No exception to the attorney-client privilege or work product immunity exists warranting entry of an order quashing the Subpoena or a protective order relieving Ms. Adams of her obligation to the comply with the Subpoena.
 
 [1]
 

 5. Defendant/Mother's Motions and Ms. Adams' Motions should be denied and Ms. Adams should fully comply with Plaintiff/Father's Subpoena.
 

 Defendant and Ms. Adams timely appealed.
 

 Ms. Adams's Appeal
 

 Ms. Adams argues that she constitutes an "aggrieved party" and has a statutory right to appeal the trial court's order pursuant to N.C. Gen.Stat. § 1-271 (2013) and Rule 3 of the North Carolina Rules of Appellate Procedure. In an abundance of caution, however, Ms. Adams filed a petition for
 
 writ of certiorari
 
 seeking appellate review of the order.
 

 Rule 3 provides that "[a]ny party entitled by law to appeal from a judgment or order of a superior or district court rendered
 
 *738
 
 in a civil action or special proceeding may take appeal...." N.C. R.App. P. 3(a) (2014). Our Supreme Court has interpreted Rule 3 to mean that it "afford[s] no avenue of appeal to either entities or persons who are nonparties to a
 
 *17
 
 civil action."
 
 Bailey v. State,
 

 353 N.C. 142
 
 , 156,
 
 540 S.E.2d 313
 
 , 322 (2000). Although Ms. Adams filed various pleadings in response to Plaintiff's subpoenas in the trial court and was represented by counsel during the hearing, it does not appear from the record that she took any action to intervene or otherwise become a party in the underlying action.
 
 See
 
 id.
 

 While Ms. Adams is correct that she will be affected by the trial court's order compelling documents and other tangible things, she is not an " aggrieved party" entitled to appeal the order.
 

 The
 
 Bailey
 
 court addressed a similar request by a nonparty and concluded that because the party had no right to appeal as a nonparty, "no such right could be lost by a failure to take timely action."
 
 Id.
 
 at 157,
 
 540 S.E.2d at 322
 
 . While Rule 21 provides that a
 
 writ of certiorari
 
 may be issued to permit review of a trial court's order if, among other reasons, there is no right of appeal from an interlocutory order, N.C.R.App. P. 21(a)(1) (2014),
 
 Bailey
 
 compels a conclusion that this avenue of appeal is not available for those who did not fall within the parameters of Rule 3 allowing the party to appeal in the first place. Accordingly, we deny Ms. Adams's petition.
 

 Defendant-Appellant's Appeal
 

 Orders compelling discovery generally are not immediately appealable.
 
 Sharpe v. Worland,
 

 351 N.C. 159
 
 , 163,
 
 522 S.E.2d 577
 
 , 579 (1999). However, orders compelling discovery "where a party asserts a privilege or immunity that directly relates to the matter to be disclosed pursuant to the interlocutory discovery order and the assertion of the privilege or immunity is not frivolous or insubstantial, the challenged order affects a substantial right and is thus immediately appealable."
 
 Hammond v. Saini,
 

 229 N.C.App. 359
 
 , 362,
 
 748 S.E.2d 585
 
 , 588 (2013)
 
 aff'd,
 

 367 N.C. 607
 
 ,
 
 766 S.E.2d 590
 
 (2014) (citation omitted).
 

 Standard of Review
 

 A trial court's order compelling the production of documents that a party claims are protected by the attorney-client privilege or the work product doctrine is generally subject to review for an abuse of discretion.
 
 Isom v. Bank of Am., N.A.,
 

 177 N.C.App. 406
 
 , 410,
 
 628 S.E.2d 458
 
 , 461 (2006). "To demonstrate such abuse, the trial court's ruling must be shown to be manifestly unsupported by reason or not the product of a 'reasoned decision.' "
 
 Id.
 
 at 410,
 
 628 S.E.2d at 461
 
 (citation omitted) (internal quotation marks omitted). However, a trial court's "discretionary ruling made under a misapprehension of the law ... may constitute an abuse of discretion."
 
 Hines v. Wal-Mart Stores E., L.P.,
 

 191 N.C.App. 390
 
 , 393,
 
 663 S.E.2d 337
 
 , 339 (2008) (order for new trial reversed
 
 *18
 
 because "the order reveals that the trial court misapprehended the law and improperly shifted plaintiff's burden of proof to defendant").
 
 See also
 

 State v. Tuck,
 

 191 N.C.App. 768
 
 , 773,
 
 664 S.E.2d 27
 
 , 30 (2008) (trial court abused its discretion in evidentiary ruling because it misapprehended the applicable discovery statute and failed to consider criteria necessary to its analysis).
 

 Analysis
 

 Plaintiff argues that Ms. Adams was not functioning in the capacity of an agent but was "merely Defendant-Appellant's friend" and that the presence of a friend during attorney-client communications and giving her access to work product defeats the claim of privilege under our state's established caselaw.
 

 Defendant argues that Ms. Adams's presence during and access to attorney-client communications and work product as a "friend, agent, and trusted confidant" did not destroy the attorney-client privilege or work product doctrine because Ms. Adams was acting as Defendant's agent.
 
 [2]
 
 In support of
 
 *739
 
 this argument, Defendant cites the written confidentiality agreement providing that Ms. Adams was acting as her "agent and personal advisor to specifically assist her in this litigation" and that Ms. Adams's presence and involvement in attorney-client communications "is necessary for the protection of [Defendant's] interest."
 

 Defendant does not contend, and did not contend before the trial court, that she and Ms. Adams had an attorney-client relationship. Rather, she contends that because Ms. Adams was her agent for purposes of this litigation, the privileges and protections arising from her
 
 *19
 
 attorney-client relationship with the law firm within the context of the confidentiality agreement remained intact despite the sharing of attorney communications and work product with Ms. Adams.
 

 In concluding that "[t]he [confidentiality agreement] executed by Ms. Adams and Defendant/Mother holds no weight in this litigation,"
 
 [3]
 
 the trial court misapprehended the law of agency. In failing to address the confidentiality agreement and other evidence of the agency relationship between Defendant and Ms. Adams, the trial court misapprehended the law regarding the extension of the attorney-client privilege and the attorney work product doctrine to communications with a client's agent within the context of the litigation and confidentiality agreement.
 

 I. Attorney-Client Privilege
 

 "It is a well-established rule in this jurisdiction that when the relationship of attorney and client exists, all confidential communications made by the latter to his attorney on the faith of such relationship are privileged and may not be disclosed."
 
 State v. Murvin,
 

 304 N.C. 523
 
 , 531,
 
 284 S.E.2d 289
 
 , 294 (1981). Our Supreme Court has outlined a five-factor test,
 
 i.e.,
 
 the
 
 Murvin
 
 test, to determine whether the attorney-client privilege attaches to a particular communication:
 

 A privilege exists if (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.... Communications between attorney and client generally are not privileged when made in the presence of a third person who is not an agent of either party.
 

 Id.
 
 at 531,
 
 284 S.E.2d at 294
 
 (citation omitted).
 

 *20
 
 The burden is always on the party asserting the privilege to demonstrate each of its essential elements. This burden may not
 
 *740
 
 be met by mere conclusory or ipse dixit assertions, or by a blanket refusal to testify. Rather, sufficient evidence must be adduced, usually by means of an affidavit or affidavits, to establish the privilege with respect to each disputed item.
 

 In re Miller,
 

 357 N.C. 316
 
 , 336,
 
 584 S.E.2d 772
 
 , 787 (2003) (citations omitted) (internal quotation marks omitted).
 

 The parties do not dispute that an attorney-client relationship existed between the law firm and Defendant. Rather, they dispute whether Ms. Adams's presence during meetings of the law firm and Defendant destroyed the privileged nature of those meetings and related documents.
 

 Defendant contends that all the communications Ms. Adams witnessed between the law firm and Defendant met all five factors of the
 
 Murvin
 
 test because Ms. Adams was an agent of Defendant. As explained below, we agree.
 

 Defendant points to Ms. Adams's affidavit attesting her role as an agent and the confidentiality agreement she and Defendant signed memorializing their mutual understanding and expectation that Ms. Adams was acting as Defendant's agent and that Ms. Adams's access to Defendant's privileged information was protected by the attorney-client privilege.
 

 Generally, communications between an attorney and client are not privileged if made in the presence of a third party because those communications are not confidential and because that person's presence constitutes a waiver.
 
 Brown v. Am. Partners Fed. Credit Union,
 

 183 N.C.App. 529
 
 , 536,
 
 645 S.E.2d 117
 
 , 122 (2007) ;
 
 Harris v. Harris,
 

 50 N.C.App. 305
 
 , 316,
 
 274 S.E.2d 489
 
 , 495 (1981). However, the privilege still applies if the third party is an agent "of either party."
 
 Murvin,
 

 304 N.C. at 531
 
 ,
 
 284 S.E.2d at 294
 
 . As explained by our Supreme Court,
 

 [i]n limiting the application of the privilege by holding that attorney-client communications which relate solely to a third party are not privileged, we note that this rationale would not apply in a situation where the person communicating with the attorney was acting as an agent of some third-party principal when the communication was made. In that instance, the information would remain privileged
 
 *21
 
 because the third-party principal would actually be the client who is communicating with the attorney through the agent. Because the communication would relate to the third-party principal's interests, it would therefore be within the scope of matter about which the attorney was professionally consulted and thus would be privileged.
 

 Miller,
 

 357 N.C. at 340-41
 
 ,
 
 584 S.E.2d at 789-90
 
 (internal citation omitted).
 

 If Ms. Adams was Defendant's agent when she witnessed the communications between Defendant and the law firm, the communications would remain privileged should they satisfy the other
 
 Murvin
 
 factors.
 

 Agency is defined as "the relationship that arises from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."
 
 Green v. Freeman,
 

 233 N.C.App. 109
 
 , 112,
 
 756 S.E.2d 368
 
 , 372 (2014). "There are two essential ingredients in the principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent."
 
 Phelps-Dickson Builders, L.L.C. v. Amerimann Partners,
 

 172 N.C.App. 427
 
 , 435,
 
 617 S.E.2d 664
 
 , 669 (2005) (citation omitted) (internal quotation marks omitted).
 

 The trial court dismissed without explanation Defendant's and Ms. Adams's claims that Ms. Adams was, at all times, acting as an agent of and consultant for Defendant. The trial court simply characterized Ms. Adams as "a good friend of Defendant/Mother" and concluded that the Agreement executed by Ms. Adams held "no weight in this litigation." In addition, based upon Finding of Fact 21, that "Ms. Adams is not an employee of the Tom Bush Law Group, nor has she been retained by the Tom Bush Law Group in this litigation," the trial court apparently considered that only a paid consultant or employee of the law firm could assist in the litigation without destroying the privilege. This misapprehension
 
 *741
 
 may have been why the trial court summarily disregarded Ms. Adams's affidavit and other evidence supporting Defendant's and Ms. Adams's contentions that, in addition to being Defendant's "good friend," Ms. Adams was also Defendant's agent and consultant in the contentious divorce and child custody proceedings, especially in light of the serious allegations noted in the temporary parenting order. Ms. Adams and Defendant memorialized their relationship in the confidentiality agreement, referring to Ms. Adams as "Client's Agent,"
 
 i.e.,
 
 Defendant's agent, and noting that Ms. Adams's role was to "serve as [Defendant's] agent and personal advisor[ ] to assist [Defendant] in her
 
 *22
 
 dispute and/or litigation." In addition, the information protected by this agreement is limited to direct communications between Defendant and the law firm and the law firm's work product, which may be developed with Ms. Adams's assistance under the confidentiality agreement. The trial court did not address whether or why this evidence did not manifest consent by Defendant and Ms. Adams regarding Ms. Adams's role.
 

 We hold that an agency relationship existed between Ms. Adams and Defendant for the purposes agreed upon between them. This holding is based not merely on Defendant's allegations and assertions,
 
 see generally
 

 In re Miller,
 

 357 N.C. at 336
 
 ,
 
 584 S.E.2d at 787
 
 , but on additional evidence derived from a source other than Defendant. The additional evidence includes the affidavit by Ms. Adams establishing that her role during the communications was as Defendant's agent and consultant-the type of evidence specifically noted by the
 
 In re Miller
 
 court as probative of an agency relationship-as well as the written agreement memorializing the agency relationship between Ms. Adams and Defendant. The agreement provided express authority by Defendant for Ms. Adams to act as her agent and evidences Defendant's control over Ms. Adams, both necessary showings to establish an agency relationship.
 
 See
 

 Phelps-Dickson Builders,
 

 172 N.C.App. at 435
 
 ,
 
 617 S.E.2d at 669
 
 . The trial court failed to conduct the essential analysis as to whether the affidavit, confidentiality agreement, and other evidence established an agency relationship. We are aware of no caselaw, nor has Plaintiff cited any authority, that being a client's "good friend" and being a client's agent are mutually exclusive. Nor does our caselaw prohibit a non-practicing attorney from acting as an agent for purposes of assisting another person in communications with legal counsel. Our holding would be the same if Ms. Adams had been a friend trained as an accountant, a psychologist, or an appraiser who agreed to assist with the litigation without charge. Consequently, we must reverse the trial court's order concluding that the attorney-client privilege does not apply in this case.
 
 [4]
 

 II. Work Product Doctrine
 

 In order to successfully assert protection based on the work product doctrine, the party asserting the protection ... bears the burden of showing (1) that the material consists of documents or tangible things, (2) which were prepared in anticipation of litigation or for trial, and (3) by or
 
 *23
 
 for another party or its representatives which may include an attorney, consultant or
 
 agent.
 

 Isom,
 

 177 N.C.App. at 412-13
 
 ,
 
 628 S.E.2d at 463
 
 (emphasis added) (citation omitted) (internal quotation marks and editing marks omitted). The doctrine is not without limits:
 

 The work-product doctrine shields from discovery all materials prepared in anticipation of litigation or for trial by or for another party or by or for that other party's consultant, surety, indemnitor, insurer, or agent. This includes documents prepared after a party secures an attorney and documents prepared under circumstances in which a reasonable person might anticipate a possibility of litigation. Materials prepared in the ordinary course of business are not protected by the work-product doctrine. The test is whether, in light of the nature of the document and the factual situation in the particular case, the
 
 *742
 
 document can fairly be said to have been prepared or obtained because of the prospect of litigation.
 

 In re Ernst & Young, LLP,
 

 191 N.C.App. 668
 
 , 678,
 
 663 S.E.2d 921
 
 , 928 (2008) (citations omitted) (internal quotation marks omitted).
 

 We are persuaded that, given the record evidence, many of the documents requested by Plaintiff may constitute privileged work product not subject to discovery. Accordingly, the trial court's order concluding that the work product protection necessarily does not apply to the documents is reversed.
 

 III. Remand
 

 Although we reverse the trial court's conclusion that neither the attorney-client privilege nor the work product doctrine has any application in this case, the ultimate determination of which documents are shielded from discovery requires further inquiry regarding the nature of each document requested. This determination must be made by the trial court from evidence including an
 
 in camera
 
 review of the documents.
 

 Plaintiff's subpoenas requested all documents relating to all of Ms. Adams's communications with Defendant, all documents relating to her communications with the law firm, and all documents relating to her communications with any third party regarding the ongoing legal proceedings during a specified time period. While we have held that the record evidence established an agency relationship between Ms. Adams and Defendant, it is unclear whether all the requested materials fall
 
 *24
 
 within the scope of the attorney-client privilege by satisfying the five-factor
 
 Murvin
 
 test. For example, communications between Ms. Adams and third parties outside the law firm may not fall within the protection of the attorney-client privilege. Therefore, we must remand for the trial court to determine whether the attorney-client privilege applies to the requested communications, using the five-factor
 
 Murvin
 
 test and considering Ms. Adams as Defendant's agent. Unless the trial court can make this determination from other evidence such as a privilege log, it must conduct an
 
 in camera
 
 review of the documents.
 
 See
 

 Raymond v. N.C. Police Benevolent Ass'n, Inc.,
 

 365 N.C. 94
 
 , 101,
 
 721 S.E.2d 923
 
 , 928 (2011) (ordering the trial court to conduct an
 
 in camera
 
 review on remand to determine whether the communications were protected by the attorney-client privilege under
 
 Murvin
 
 ).
 

 We also are unable to determine based on the limited record whether the documents requested, or any of them, are subject to the work product doctrine. This determination is necessary only for documents which Defendant asserts are work product and which the trial court concludes are not protected by the attorney-client privilege.
 
 See
 

 Isom,
 

 177 N.C.App. at 412-13
 
 ,
 
 628 S.E.2d at 463
 
 . We remand for the trial court to review the documents
 
 in camera
 
 and determine whether the work product protection applies, taking into account that Ms. Adams was acting as Defendant's agent.
 
 See
 

 Ernst & Young, LLP,
 

 191 N.C.App. at 677-78
 
 , 663 S.E.2d at 928 (2008) (remanding for an
 
 in camera
 
 review to determine whether the documents requested were created in anticipation of litigation and satisfy the work product doctrine). A document created by Ms. Adams within the context of the confidentiality agreement for the law firm and for the purposes of the litigation would be protected, as would any documents created by the law firm which would normally be protected even if they were shared with Ms. Adams.
 

 Given our reversal of the trial court's order, it is not necessary to address Defendant's alternative argument that Plaintiff's subpoena to Ms. Adams exceeded the scope of Rule 45 of the North Carolina Rules of Civil Procedure.
 

 Conclusion
 

 Based on the foregoing reasons, we reverse the trial court's order denying Defendant's motion to quash and remand for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges CALABRIA and STROUD concur.
 

 [1]
 

 The trial court's conclusion that "[n]o exception to the attorney-client privilege or work product immunity exists" in this case appears to be a non-sequitur because the court ultimately held that neither the privilege nor the immunity applied.
 

 [2]
 

 Defendant also urges this Court to adopt an approach used in other jurisdictions which considers, on a case-by-case basis, the intention and understanding of the client as to whether the communications would remain confidential. Defendant specifically cites the analysis adopted by the Rhode Island Supreme Court in
 
 Rosati v. Kuzman,
 

 660 A.2d 263
 
 , 266 (R.I.1995) (holding that "the mere presence of a third party per se does not constitute a waiver thereof. Given the nature of the attorney-client privilege, the relevant inquiry focuses on whether the client reasonably understood the conference to be confidential notwithstanding the presence of third parties." (emphasis removed) (citation removed) (internal quotation marks removed)), and by courts in Maryland.
 
 See
 

 Newman v. State,
 

 384 Md. 285
 
 , 307,
 
 863 A.2d 321
 
 , 334-35 (2004) (concluding that the attorney-client privilege was not defeated by the presence of a third party confidant because: (1) the record indicated the client's "clear understanding that the communications made in the presence of [the third party] would remain confidential"; (2) the attorney "exerted his control over [the third party's] presence"; and (3) in all times during the "extremely contentious" divorce and custody proceedings, the third party "acted as a source of support for [the client]" by attending court proceedings with the client, participating in investigations, and communicating directly with the attorney).
 

 [3]
 

 The trial court included this statement in both its findings of fact and conclusions of law. Because it involves the application of legal principles, it is a conclusion of law.
 
 In re Helms,
 

 127 N.C.App. 505
 
 , 510,
 
 491 S.E.2d 672
 
 , 675-76 (1997) (although trial court made identical findings of fact and conclusions of law that juvenile was neglected, that a government agency had made reasonable efforts to prevent her removal from her parent's home, and that it was in the juvenile's best interest to remain in county custody, "[t]hese determinations ... are more properly designated conclusions of law and we treat them as such for purposes of this appeal"). Plaintiff did not dispute the authenticity of the confidentiality agreement or present any evidence to dispute Defendant's or Ms. Adams's stated understanding and intention in executing the confidentiality agreement.
 

 [4]
 

 Although Defendant's appellate counsel urges this Court to adopt a new rule requiring the trial court to consider the client's expectations regarding confidentiality, it is not necessary given the evidence establishing an agency relationship.