BOBBIEJO LEE WOODS, Administratrix of the Estate of ROBERT GORDON WOODS, Plaintiff v. MOSES CONE HEALTH SYSTEM d/b/a MOSES CONE MEMORIAL HOSPITAL and GUILFORD NEUROSURGICAL ASSOCIATES, P.A., Defendants

No. COA08-1556

(Filed 7 July 2009)

## 1. Appeal and Error— appealability—interlocutory order— discovery of privileged information

An interlocutory order affected a substantial right and was properly before the Court of Appeals where the order compelled production of a letter which might be statutorily privileged as part of a hospital peer review following a postoperative death.

## 2. Medical Malpractice— peer review committee—statutory requirements satisfied

A Surgical Peer Review Committee (SPRC) met the definition of a medical review committee within the meaning of N.C.G.S. § 131E-76(5).

## 3. Medical Malpractice— peer review committee—requested information—absolutely privileged

The trial court erred in a medical malpractice action by concluding that the physician responsible for the postoperative treatment of a deceased patient could waive the medical peer review privilege by disseminating a letter to the peer review committee to people outside the committee. The letter was produced at the request of the committee and is absolutely privileged under N.C.G.S. § 131E-95. The issue of reliance on the privileged material by the doctor's experts was not raised at trial and was not properly before the appellate court.

## 4. Appeal and Error— assignments of error—not sufficiently specific

Assignments of error involving information furnished to a medical peer review committee did not state specifically the findings and conclusions plaintiff contended were erroneous. The conclusion that the root cause analysis report from the committee was privileged was binding.

Appeal by Defendant Moses Cone Health System d/b/a Moses Cone Memorial Hospital and by Plaintiff from order entered 7 July 2008 by Judge Anderson Cromer in Superior Court, Guilford County. Heard in the Court of Appeals 20 May 2009.

*Law Offices of Grover C. McCain, Jr., by Grover C. McCain, Jr., for Plaintiff.*

*Wilson & Coffey, LLP, by G. Gray Wilson and Lorin J. Lapidus for Defendant.*

*North Carolina Hospital Association, by Linwood L. Jones; and The North Carolina Association of Defense Attorneys, by Timothy P. Lehan and Deanna Davis Anderson, amicus curiae.*

McGEE, Judge.

Thirty-one-year old Robert Gordon Woods (Woods) was scheduled for ambulatory surgery on 22 February 2005 at Moses Cone Memorial Hospital and was to be discharged that same day. However, due to complications with his surgery, Woods was admitted to the hospital immediately following his surgery. Woods began complaining of difficulty swallowing and weakness in his right hand and foot. Woods' condition deteriorated over the next two days and he was returned to surgery at approximately 7:00 a.m. on 24 February 2005. Woods' medical condition continued to deteriorate and after a final respiratory arrest on 4 March 2005, Woods died.

Bobbiejo Lee Woods (Plaintiff) is the administrator of Woods' estate. Plaintiff filed a medical malpractice action on 6 February 2007 against Moses Cone Health System d/b/a Moses Cone Memorial Hospital (Defendant) and Guilford Neurosurgical Associates, P.A. (GNA), alleging Defendant and GNA were negligent in administering medical care to Woods and that their negligence caused Woods' death. GNA is not a party to this appeal. Plaintiff served Defendant with interrogatories and a request for production of documents. Defendant's answer and response included objections to Plaintiff's discovery requests, stating that the information sought by Plaintiff was privileged.

Plaintiff filed a motion to compel on 23 May 2008. In response, Defendant filed a motion for a protective order on 16 June 2008. Defendant claimed the discovery materials sought by Plaintiff were protected by N.C. Gen. Stat. § 131E-95 as materials produced by a medical review committee. In support of its motion for a protective order, Defendant filed an affidavit on 20 June 2008 of Amy Parker (Parker), a clinical risk management specialist employed by Defendant. Parker's affidavit stated:

1. The hospital maintains a medical review committee pursuant to North Carolina law, such that its proceedings are confidential. This committee conducted a peer review investigation into the medical care provided to [Woods] with regard to his hospitalization in February-March 2005, which is the subject matter of this lawsuit. In June 2005, the committee directed a written request to Dr. [] Stern for information about [the Woods case], to which Dr. Stern replied by correspondence to the committee in November 2005, which information was considered and utilized by the committee in its investigation of [the Woods case], and treated as strictly confidential at all times. In addition to responding to the written request of the committee for information, Dr. Stern was also a member of the committee at the time.

2. The hospital also has a quality assurance committee pursuant to North Carolina law, such that its proceedings are also confidential. This committee performed a root cause analysis on March 30, 2005 with regard to [Wood's] hospitalization as set forth above. The report generated by this committee was based on its investigation of this matter and is treated as strictly confidential as well.

Plaintiff's motion to compel and Defendant's motion for a protective order were heard on 26 June 2008. By stipulation of Plaintiff and Defendant, the only issues the trial court considered at the hearing were whether or not Plaintiff could compel discovery of (1) the 1 November 2005 letter (the letter) from Dr. Joseph Stern (Dr. Stern), the GNA neurosurgeon responsible for the post-operative treatment of Woods, to Dr. Mark Yates (Dr. Yates), Chairperson of Defendant's Surgical Peer Review Committee (SPRC), and (2) the root cause analysis report as described in Parker's affidavit. The trial court entered an order on 7 July 2008, in which it granted in part and denied in part Plaintiff's motion to compel, and granted in part and denied in part Defendant's motion for a protective order. The trial court held that:

4. . . . The root cause analysis reports are the final result of [] quality assurance investigations or inquiries into the delivery of health services at [] [Defendant] Hospital. The inquiry was facilitated by the Serious Event Task Force (SETF) Committee, which is comprised of both healthcare providers and non-health care providers and that this committee is a subcommittee of the Medical Performance Improvement Committee, which

qualifies as a medical review committee under G.S. §§ 90-21.22 *et seq.* The [SETF] Committee was acting pursuant to peer review activity under the auspices of the Medical Performance Improvement Committee when ordering a root cause analysis inquiry. The root cause analysis report described by [] Parker in her testimony and in her affidavit is confidential, privileged and not subject to discovery as a peer review document generated by a medical review committee as that term is defined in G.S. §§ 90-21.22 *et seq.*

The trial court held that "the letter from Dr. Stern to Dr. Yates, [the chairperson of the SPRC], was a part of peer review activities at [Defendant] Hospital and would, nothing else appearing, be entitled to confidentiality pursuant to peer review statutes and authority as privileged material." However, the trial court further held:

6. Counsel for [GNA] has made the letter of November 1, 2005 from Dr. Stern to Dr. Yates available to one or more reviewing experts. . . .

7. The November 2, 2005 letter from Dr. Stern to Glenn Waters, [Defendant's chief operating officer], which enclosed a copy of the November 1, 2005 letter, was not part of peer review activities and was not directed to a medical review committee or any committee entitled to claim privilege or confidentiality.

8. The disclosure of the letter of November 1, 2005 from Dr. Stern to Dr. Yates (a) to Mr. Waters, and (b) to reviewing experts by counsel for defendant [GNA] made the letter otherwise available and operated as a waiver by Dr. Stern of the confidentiality of the information contained in the letter. However, upon conducting its *in camera* review, some information contained in the November 1, 2005 letter refers to root cause analysis or opinions about peer review activity. The Court has redacted those parts of the letter from the November 1 letter. . . .

The trial court sealed the original and redacted versions of the letter to be made part of the court file in the event of appellate review. Defendant filed notice of appeal on 22 July 2008. Plaintiff filed notice of appeal on 23 July 2008.

I.

[1] The trial court's order in the present case is an interlocutory order. However, N.C. Gen. Stat. § 7A-27(d)(1) permits an appeal from

an interlocutory order which affects a substantial right. N.C. Gen. Stat. § 7A-27(d)(1) (2007). Our Supreme Court has held that "when . . . a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right." *Sharpe v. Worland*, 351 N.C. 159, 166, 522 S.E.2d 577, 581 (1999); *see also Hayes v. Premier Living, Inc.*, 181 N.C. App. 747, 751, 641 S.E.2d 316, 318 (2007) (finding that the interlocutory discovery order compelling production of reports which might be privileged pursuant to N.C. Gen. Stat. §§ 90-21.22A and 131E-107 affected a substantial right and was therefore immediately appealable). Because the trial court's order in the present case compels the production of a letter which might be statutorily privileged, the interlocutory order affects a substantial right and is therefore properly before us.

II.

A. Defendant's appeal

[2] Defendant assigns error to the trial court's conclusion in paragraph eight of the trial court's order that the letter from Dr. Stern to Dr. Yates was discoverable because Dr. Stern's dissemination of the letter to parties outside the medical review committee made the letter "otherwise available and operated as a waiver" of the confidentiality of the letter. Defendant argues that because the letter was produced by a medical review committee, the letter is absolutely privileged and cannot become "otherwise available."

In paragraph one of its order, the trial court concluded that the letter was "part of peer review activities at [Defendant] Hospital and would, nothing else appearing, be entitled to confidentiality pursuant to peer review statutes and authority as privileged material." However, the trial court did not specifically find whether the SPRC was a medical review committee, and if so, pursuant to which statute.

Plaintiff's suit against Defendant is a civil action against a hospital and N.C. Gen. Stat. § 131E-95, part of the Hospital Licensure Act, creates protection for medical review committees in civil actions against hospitals. Therefore, N.C. Gen. Stat. § 131E is the applicable statute for determining whether the SPRC was a medical review committee and if so, the extent of protection granted to it.

N.C. Gen. Stat. § 131E-76(5) defines "medical review committee" as:

(5) "Medical review committee" means any of the following committees formed for the purpose of evaluating the quality, cost of, or necessity for hospitalization or health care, including medical staff credentialing:

   a. A committee of a state or local professional society.

   b. A committee of a medical staff of a hospital.

   c. A committee of a hospital or hospital system, if created by the governing board or medical staff of the hospital or system or operating under written procedures adopted by the governing board or medical staff of the hospital or system.

N.C. Gen. Stat. § 131E-76(5) (2007). The Bylaws of the Medical and Dental Staff of Defendant Hospital (the Bylaws) state in pertinent part:

10.15 PEER REVIEW COMMITTEES

(a) Committees. The Service Chief of each Service shall appoint a Peer Review Committee for the Service to perform the duties provided in Section 10.15(d). . . .

(b) Membership. The membership of a Peer Review Committee shall be as determined by the Service Chief of the Service or the Section Chair of the Section . . . provided that the membership shall consist primarily of members of the Staff with only a very limited number of non-Staff appointments (if any), and shall otherwise be limited, such that composition of the Committee shall qualify the Committee, and preserve the Committee's status, as a medical review committee as defined by N.C. Gen. Stat. § 131E-76(5).

. . . .

(d) Function. The duties of the Committee shall be to:

   (1) work in cooperation with the Service Chief or Section Chair to establish effective systems for monitoring and evaluating the care rendered by the Service or Section and identify opportunities for improvement.

We find that, according to the Bylaws, the SPRC is a peer review committee of the surgical section and that the composition and function of the SPRC as defined by the Bylaws meet the definition of a "medical review committee" within the meaning of N.C.G.S. 131E-76(5).

*See Shelton v. Morehead Memorial Hospital,* 318 N.C. 76, 87, 347 S.E.2d 824, 831 (1986).

[3] Having determined that the SPRC is a medical review committee under N.C. Gen. Stat. § 131E, we next interpret the extent of the privilege given the SPRC under N.C. Gen. Stat. § 131E-95. We review the trial court's statutory interpretation *de novo. A&F Trademark, Inc. v. Tolson,* 167 N.C. App. 150, 153, 605 S.E.2d 187, 190 (2004) (citations omitted). Statutory interpretation begins with the plain meaning of the words of the statute. *Radzisz v. Harley Davidson of Metrolina,* 346 N.C. 84, 89, 484 S.E.2d 566, 569 (1997) (citation omitted). N.C. Gen. Stat. §131E-95 states in pertinent part:

(b)  The proceedings of a medical review committee, the records and materials it produces, and the materials it considers shall be confidential and not considered public records within the meaning of G.S. 132-1 . . . and shall not be subject to discovery or introduction into evidence in any civil action against a hospital . . . which results from matters which are the subject of evaluation and review by the committee.

N.C. Gen. Stat. § 131E-95 (2007). By its plain language, N.C. Gen. Stat. § 131E-95 creates three categories of information protected from discovery and admissibility at trial in a civil action: (1) proceedings of a medical review committee, (2) records and materials produced by a medical review committee, and (3) materials considered by a medical review committee. Additionally, N.C.G.S. § 131E-95 states: "However, information, documents, or other records otherwise available are not immune from discovery or use in a civil action merely because they were presented during proceedings of the committee." N.C.G.S. § 131E-95.

Plaintiff argues that the trial court correctly concluded that this exception clause applies to all three protected categories of information and that even if the letter was originally produced by a medical review committee, it has since become "otherwise available" and therefore no longer immune from discovery or use at trial. However, this interpretation of N.C. Gen. Stat. § 131E-95 is contrary to the purpose of the Hospital Licensure Act and case law interpreting N.C.G.S. § 131E-95.

"Legislative intent controls the meaning of a statute; and in ascertaining this intent, a court must consider the act as a whole, weighing the language of the statute, its spirit, and that which the statute seeks

to accomplish." *Shelton*, 318 N.C. at 81-82, 347 S.E.2d at 828 (citations omitted). "The statute's words should be given their natural and ordinary meaning unless the context requires them to be construed differently." *Id.* at 82, 347 S.E.2d at 828 (citing *In re Arthur*, 291 N.C. 640, 642, 231 S.E.2d 614, 615 (1977)).

> The stated purposes of the Hospital Licensure Act are to promote the public health, safety and welfare and to provide for basic standards for care and treatment of hospital patients. Section 95 of the Act protects from discovery and introduction into evidence medical review committee proceedings and related materials because of the fear that external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity. [The Act] represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs access to evidence.

*Id.* (citations and internal quotations omitted). "It would severely undercut the purpose of § 95, i.e., the promotion of candor and frank exchange in peer review proceedings, if we adopted [Plaintiff's] construction of the statute," *id*, for it would mean a document, which was created solely at the behest of a medical review committee, would no longer be protected if the author chose to subsequently disseminate the document to persons or entities outside the medical review committee.

Further, the language in *Shelton* makes it clear that if the material sought to be discovered or introduced at trial falls within the first two categories of information under N.C. Gen. Stat. § 131E-95, the material is absolutely protected and cannot later become "otherwise available." Our Supreme Court in *Shelton* stated: "[I]nformation, in whatever form available, from *original sources other than the medical review committee* is not immune from discovery or use at trial merely because it was presented during medical review committee proceedings," *id.* at 83, 347 S.E.2d at 829 (emphasis added); and "[p]ermitting access to information *not generated by the committee itself* but merely presented to it does not impinge on this statutory purpose." *Id.* at 83-84, 347 S.E.2d at 829 (emphasis added).

Our Supreme Court further stated in *Shelton* that "it may be necessary to identify not only the document by name and its custodian, but also the document's *source and the reason for its creation*," *id.* at 86, 347 S.E.2d at 831 (emphasis added), and held that "[d]ocuments and information which are otherwise immune from discovery

under § 95 do not, however, lose their immunity because they were transmitted" to persons outside the medical review committee. *Id.* at 84-85, 347 S.E.2d at 830.

Similarly, in *Virmani v. Presbyterian Health Services Corp.*, 350 N.C. 449, 467, 515 S.E.2d 675, 687 (1999), the plaintiff attached to his complaint records and materials produced by a medical review committee. Our Supreme Court held that once the peer review records (the records) were attached to the plaintiff's complaint and filed with the trial court, the records became available to the public. *Id.* Nonetheless, our Supreme Court stated that because N.C.G.S § 131E-95 expressly prohibited the introduction of peer review records into evidence, it was improper for the plaintiff to attach the records to his complaint and they remained inadmissible despite having becoming public record. *Id.*

In the present case, Parker's affidavit stated: "the committee *directed* a written request to Dr. [] Stern for information about [the Woods case], to which Dr. Stern replied by correspondence to the committee [on 1 November 2005], which information was considered and utilized by the committee in its investigation of [the Woods case]." (emphasis added). The trial court stated that the letter was "to Dr. [] Yates, chair[person] of the [SPRC], and they [sic] were *produced for the committee at the direction of the committee's chair[person]*." (emphasis added). Because the letter was produced at the request of a medical review committee, the letter is absolutely privileged under N.C.G.S. § 131E-95. Although the letter might be seen by persons outside the committee, it nonetheless remains protected from discovery and admissibility at trial. Therefore, the trial court erred in concluding that Dr. Stern could waive the privilege by disseminating the letter to persons outside the committee. Thus, the trial court's order partially granting Plaintiff's request to compel Defendant to produce a redacted version of the letter is reversed.

In its brief, Defendant asks our Court to provide specific instructions that GNA's experts not be permitted to testify at deposition or trial because they might have based their expert opinions on information contained in the privileged letter. However, Defendant limited its motion for a protective order to protection from compelling the discovery of the privileged material. Because the issue of GNA's experts' reliance on the privileged material was not raised at the trial court, Defendant's argument is not properly before us. N.C.R. App. P. 10(b)(1).

### B. Plaintiff's Appeal

**[4]** In Plaintiff's sole assignment of error, Plaintiff states:

> The trial court erred by not fully granting [P]laintiff's motion to compel and by granting [D]efendant['s] . . . motion for a protective order in part on the grounds that "the Root Cause Analysis" of the death of . . . Woods is not confidential, or privileged, or entitled to protection as a peer review document generated by a medical care committee as that term is defined in G.S. 90-21.22, *et seq.*

N.C. R. App. P. 10(c)(1) requires that "[e]ach assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned." N.C.R. App. P. 10(c)(1). Our Court held in *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000) (citations omitted), that "[w]here findings of fact are challenged on appeal, each contested finding of fact must be separately assigned as error, and the failure to do so results in a waiver of the right to challenge the sufficiency of the evidence to support the finding." We further stated that "[w]here an appellant fails to assign error to the trial court's findings of fact, the findings are 'presumed to be correct.' " *Id.* (quoting *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998)). "Failure to [assign error to each conclusion] constitutes an acceptance of the conclusion and a waiver of the right to challenge said conclusion as unsupported by the facts." *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 112, 516 S.E.2d 647, 649 (1999).

Plaintiff's assignment of error fails to specifically state which findings of facts and/or conclusions of law Plaintiff contends were erroneous. Our Court cannot determine from Plaintiff's assignment of error if Plaintiff meant to challenge the trial court's conclusion that (1) the root cause analysis was generated by a medical care committee, (2) the root cause analysis was not confidential, privileged, or protected, (3) the court utilized an incorrect statute to determine that the committee was a medical care committee, or (4) some combination of errors. Nor can we determine if Plaintiff intended to challenge the sufficiency of the findings of fact or just the trial court's conclusions of law.

The trial court found that "[t]he root cause analysis report . . . is confidential, privileged and not subject to discovery as a peer review document generated by a medical review committee as that term is

defined in G.S. §§ 90-21.22 *et seq.*" Because Plaintiff failed to properly assign error to the trial court's conclusions, they are binding on appeal. *See Fran's Pecans, Inc.* Therefore, the trial court's conclusion that the root cause analysis was privileged and not subject to discovery is affirmed.

Affirmed in part; reversed and remanded in part.

Judges JACKSON and ERVIN concur.