NO. COA13-818

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

JERRY M. MEDLIN,
    Plaintiff,

    v.                              Durham County
                                    No. 11-CvS-1525

NORTH CAROLINA SPECIALTY HOSPITAL,
LLC, TIMOTHY N. YOUNG, and NORTH
CAROLINA EYE, EAR, NOSE & THROAT,
P.A.,
    Defendants.


Appeal by defendant North Carolina Specialty Hospital, LLC from orders entered 11 March 2013 and 14 March 2013 by Judge Paul G. Gessner in Superior Court, Durham County. Heard in the Court of Appeals 12 December 2013.

> *Bill Faison, for plaintiff-appellee.*

> *Brown Law LLP, by Gregory W. Brown and Amy H. Hopkins, for defendant-appellant North Carolina Specialty Hospital, LLC.*


STROUD, Judge.


Defendant North Carolina Specialty Hospital, LLC appeals orders addressing various motions regarding pretrial matters. For the following reasons, we affirm and remand to the trial court for determination of the reasonable amount of attorney fees incurred by plaintiff in responding to this appeal.

## I. Background

On 5 January 2011, plaintiff filed a verified complaint against defendants for medical malpractice arising from plaintiff's cataract surgery, which was performed by defendant Timothy N. Young, an employee of defendant North Carolina Eye, Ear, Nose & Throat, P.A. Plaintiff alleged that he suffered permanent damage to his eye and extreme pain as a result of the negligent use of Methylene Blue in his eye. Methylene Blue is known to be toxic to the eye, but it was mistakenly used instead of VisionBlue, a non-toxic stain intended for use in eye surgery. On or about 21 March 2011, defendant North Carolina Specialty Hospital, LLC ("defendant Hospital") answered plaintiff's complaint by denying liability and asserting three "affirmative defenses," stated as a non-specific failure "to state facts sufficient to constitute a cause of action[;]" "all applicable statutes of limitation and repose[;]" and "[p]laintiff's failure to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure." Various pretrial motions, many involving discovery, ensued, and we will discuss only those relevant for purposes of this appeal.

On or about 7 March 2013, the trial court signed an order ("Order 1") addressing pretrial motions made by the parties. The order provided that

> the Court allows the Plaintiff's Motion to Shorten Time for giving notice of this hearing so that the hearing may go forward. Moreover, the Court in its discretion and pursuant to Paragraph 13 of the Consent Amended Discovery Scheduling Order of 3 October 2012 extends the time set forth in Paragraph 6 of that Order through and including March 8, 2013. In its discretion the Court denies the Hospital's Motion For Protective Order regarding depositions noticed for March 8, 2013, and further in its discretion orders that the depositions of Joy Boyd and Cathy Pruitt and Randy Pisko, and the Civil Procedure Rule 30(b)(6) Deposition of the Hospital . . . [shall go forward prior to 15 March 2013] under the terms and conditions as noticed by the Plaintiff.
> Plaintiff's Motion to Compel Discovery is noticed for hearing March 11, 2013. To the extent Hospital's Motion For Protective Order is directed at the Notice of Hearing and/or the timing of the Notice of Hearing for March 11, 2013, in the Court's discretion the time for giving notice is shortened to the time when it was given, and Hospital's Motion is denied, and hearing on Plaintiff's Motion to Compel Discovery shall go forward on March 11, 2013 as noticed. The Court has not taken up the substantive issues raised by the Plaintiff's Motion to Compel or the Hospital's Motion for Protective Order relating to the Plaintiff's Motion to Compel, leaving those matters for hearing on March 11, 2013.

On 14 March 2013, the trial court entered an order ("Order

2") regarding further pretrial motions. After reviewing numerous documents including motions, answers to interrogatories, a response to a request for production of documents, deposition transcripts, exhibits, and authority, the trial court found

> as a Fact that in the course of the depositions of Joy Boyd and Cathy Pruitt Hospital's counsel instructed both not to answer questions regarding the process of the investigation undertaken as a result of events described in the Plaintiff's complaint. The Court, in its discretion orders that the questions Joy Boyd was instructed not to answer all be answered as if posed by written interrogatories and counsel for the Hospital shall serve answers on counsel for Plaintiff by 4 o'clock p.m. March 15, 2013 by fax, (email if agreed to by the parties) or hand delivery as follows . . .

The trial court then recited portions of Joy Boyd's deposition and ordered

> the questions Cathy Pruitt was instructed not to answer as set out below be answered as if posed by written interrogatories and counsel for the Hospital shall serve answers on counsel for Plaintiff by 4 o'clock p.m. March 15, 2013 by fax (email if agreed to by the parties) or hand delivery as follows . . . . .

The trial court then recited portions of Cathy Pruitt's deposition. The trial court went on to order

> that the Hospital shall provide a "Privilege

Log" with the specificity as requested in Paragraph 23 of the Plaintiff's First Set of Interrogatories to Hospital and shall serve the "Privilege Log" on counsel for Plaintiff by 4 o'clock p.m. March 15, 2013 by fax, (email if agreed to by the parties) or hand delivery.

The Court has reviewed Defendant Hospital's Exhibit 1 In Camera and in its discretion concludes that those documents were prepared pursuant to NCGS § 131E-95(b) and are protected from production by the peer review statues.

The Court having determined that eighteen of the twenty-one questions Joy Boyd and Cathy Pruitt were instructed not to answer are ordered answered, and that the privilege log sought by Plaintiff of the Hospital is ordered produced that Plaintiff is entitled to recover attorneys' fees and costs for bringing forward his Rule 37 Motion. The Court reserves ruling on the amount for further hearings into the time this matter required of Plaintiff's counsel including bringing forward both motions to compel, preparing for hearing, attending hearing and preparing this Order.

Defendant Hospital appeals Order 1, Order 2, and "the March 11, 2013 Oral Order [made between Order 1 and Order 2] requiring the production of peer-review privileged documents for in camera review by the trial judge and allowing the Plaintiff's Motion to Shorten Time to Notice Hearing on the Plaintiff's Motion to Compel" ("Ruling").

## II. Ruling

As to the Ruling on the plaintiff's Motion to Shorten Time

to Notice Hearing on "the Plaintiff's Motion to Compel[,]" no written order was ever entered. This Court has previously determined that parties

> cannot appeal from and this Court cannot consider an order which has not been entered. *See Munchak Corp. v. McDaniels*, 15 N.C. App. 145, 147–48, 189 S.E.2d 655, 657 (1972) ("The general rule is that, the mere ruling, decision, or opinion of the court, no judgment or final order being entered in accordance therewith, does not have the effect of a judgment, and is not reviewable by appeal or writ of error. As to oral opinions it is said that, a mere oral order or decision which has never been expressed in a written order or judgment cannot, under most authorities, support an appeal or writ of error. There is case authority in North Carolina for this rule. In *Taylor v. Bostic*, 93 N.C. 415 (1885) the trial court entered a written statement of his opinion, but no order or judgment was entered. The North Carolina Supreme Court held that the appeal was premature, there being no judgment and therefore no question of law presented from which appeal could be taken." (citations, quotation marks, and brackets omitted)).

*Dafford v. JP Steakhouse LLC*, 210 N.C. App. 678, 683, 709 S.E.2d 402, 406 (2011). Accordingly, we will not consider any arguments on appeal regarding the trial court's oral Ruling. *See id.*

### III. Interlocutory Order

Defendant Hospital acknowledges that its appeal is

interlocutory but contends that a substantial right regarding "the production of privileged materials and testimony" would be affected should this Court not hear its appeal. Plaintiff contends that defendant Hospital's appeal asserts that it is regarding privileged material but in actuality the material is not privileged. Plaintiff further argues that defendant Hospital attempts to appeal a decision the trial court made upon its own request and other issues which in no way affect a substantial right.

> Generally, orders denying or allowing discovery are not appealable since they are interlocutory and do not affect a substantial right which would be lost if the ruling were not reviewed before final judgment. As this Court has explained: Our appellate courts have recognized very limited exceptions to this general rule, holding that an order compelling discovery might affect a substantial right, and thus allow immediate appeal, if it either imposes sanctions on the party contesting the discovery, or requires the production of materials protected by a recognized privilege.

*Britt v. Cusick* ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (Jan. 7, 2014) (No. COA13-387) (citations and quotation marks omitted). Accordingly, we consider defendant Hospital's appeal as to issues regarding privilege and these issues alone; *see id.*, to the extent that plaintiff is correct, and defendant

Hospital has invited its own "error" or raised issues which would not affect a substantial right, we will consider whether said issues are appropriate for our substantive review on appeal.

IV. Depositions Regarding Peer Review Privileged Matters

Defendant Hospital first contends that "[t]he Trial Court erred when it ruled that Plaintiff's Counsel could secure deposition testimony on Peer Review Privileged matters." Defendant Hospital argues that the trial court erred in Order 2 when it

> ordered that the depositions of Randi Shults, Joy Boyd, and Cathy Pruitt proceed without placing appropriate limitations on their scope to ensure that questions regarding matters that were the subject of evaluation and review by The Hospital's Peer Review Committee were not posed, thereby jeopardizing The Hospital's Peer Review Privilege[,]

and when it "ordered that the handful of questions that undersigned counsel instructed witnesses Joy Boyd and Cathy Pruitt not to answer on the basis of the Peer Review Privilege be answered as if posed by written interrogatories."

As to the trial court's alleged failure to limit the scope of various depositions, defendant Hospital makes no real argument other than stating that the trial court erred nor does

defendant Hospital cite any law supporting this assertion. In addition, the trial court did actually limit the scope of the depositions and did not permit all of the questions requested by plaintiff. Indeed, in this argument the only relief defendant Hospital requests is that this Court "vacate Judge Gessner's 14 March 2013 Order requiring The Hospital to provide additional testimony from Ms. Boyd and Nurse Pruitt." Accordingly, we address only the issue regarding the trial court's order requiring Joy Boyd and Cathy Pruitt to answer certain questions which had been asked at the depositions in the form of interrogatories. *See Holleman v. Aiken*, 193 N.C. App. 484, 508, 668 S.E.2d 579, 594 (2008) ("[P]laintiff has cited no legal authority in support of her argument, and pursuant to North Carolina Rule of Appellate Procedure 28(b)(6), it is deemed abandoned. *See* N.C.R. App. P. 28(b)(6).").

In order to determine if the trial court erred in requiring individuals to provide allegedly privileged information we must first determine if the information is indeed privileged. Defendant Hospital contends that the requested information is privileged pursuant to North Carolina General Statute § 131E-95(b). Questions as to what is privileged pursuant to North Carolina General Statute § 131E-95(b) are reviewed *de novo*.

*Bryson v. Haywood Reg'l Med. Ctr.*, 204 N.C. App. 532, 535, 694 S.E.2d 416, 419 ("Thus, we review de novo whether the requested documents are privileged under N.C. Gen. Stat. § 131E-95(b)."), *disc. review denied*, 364 N.C. 602, 703 S.E.2d 158 (2010).

As to North Carolina General Statute § 131E-95, this Court has stated,

> By its plain language, N.C. Gen. Stat. § 131E-95 creates three categories of information protected from discovery and admissibility at trial in a civil action: (1) proceedings of a medical review committee, (2) records and materials produced by a medical review committee, and (3) materials considered by a medical review committee. Additionally, N.C.G.S. § 131E-95 states: However, information, documents, or other records otherwise available are not immune from discovery or use in a civil action merely because they were presented during proceedings of the committee.

*Woods v. Moses Cone Health Sys.*, 198 N.C. App. 120, 126, 678 S.E.2d 787, 791-92 (2009) (citation and quotation marks omitted), *disc. review denied*, 363 N.C. 813, 693 S.E.2d 353 (2010). Our Supreme Court has further clarified though that the

> provisions [in North Carolina General Statute § 131E-95] mean that information, in whatever form available, from original sources other than the medical review committee is not immune from discovery or use at trial merely because it was presented during medical review committee proceedings; neither should one who is a member of a medical review committee be prevented from

testifying regarding information he learned from sources other than the committee itself, even though that information might have been shared by the committee.

The statute is designed to encourage candor and objectivity in the internal workings of medical review committees. Permitting access to information not generated by the committee itself but merely presented to it does not impinge on this statutory purpose. These kinds of materials may be discovered and used in evidence even though they were considered by the medical review committee. This part of the statute creates an exception to materials which would otherwise be immune under the third category of items as set out above.

*Shelton v. Morehead Memorial Hospital*, 318 N.C. 76, 83-84, 347 S.E.2d 824, 829 (1986) (citation omitted).

Plaintiff contends that neither Joy Boyd nor Cathy Pruitt "are members of a peer review committee or ever met with a peer review committee related to this matter." While we do not have the entire deposition of either Joy Boyd or Cathy Pruitt, defendant Hospital's brief identifies Joy Boyd as the Hospital's Director of Surgical Services and Cathy Pruitt as a nurse who assisted another nurse in using the Pyxis machine that dispensed Methylene Blue. Defendant Hospital does not contend that Joy Boyd or Cathy Pruitt are members of the peer review committee or that they ever met with a peer review committee though it does contend that Joy Boyd prepared documents for review by the peer

review committee. Defendant Hospital directs us to portions of the record which it contends show that Joy Boyd and Cathy Pruitt testified "that everything they did in terms of discussing and investigating the incident was done within the Peer Review Process[;]" however, the cited portion of the record includes statements made by defendant Hospital's attorney, not testimony from either Joy Boyd or Cathy Pruitt. Furthermore, even defendant Hospital's attorney stated in the cited portions,

> I asked each one of them, "was it your understanding when these conversations are going on that it was part of the peer-review process?" Ms. Boyd said *her role was to work with the risk manager to gather data at the direction of the peer-review committee.* That was what she says. '*I prepare things*' – page 25, line 2. '*I prepare things that go to the peer-review process.*'"

(Emphasis added.) But "prepar[ing] things" for a peer review committee does not necessarily mean that the information gathered is privileged:

> [t]he statute is designed to encourage candor and objectivity in the internal workings of medical review committees. Permitting access to information not generated by the committee itself but merely presented to it does not impinge on this statutory purpose. These kinds of materials may be discovered and used in evidence even though they were considered by the medical review committee.

*Id.*

Lastly, and most importantly, we have reviewed the questions which the trial court ordered Joy Boyd and Cathy Pruitt to answer in the form of responses to written interrogatories, and we disagree with defendant Hospital's contentions that such questions are privileged pursuant to North Carolina General Statute § 131E-95. The questions are as follows:

- "Did you prepare a report as a result of your investigation?"

- "Tell me what you did. When you say you and she worked together what are you trying to describe to me?"

- "Well, tell me how it works. How did you work together, what did you do? You're – that's what I want to understand. If – If I were sitting there watching the two of you, tell me what I see you doing."

- "Tell me what I see the two of you doing."

- "Now when you say we prepare a document, who – who dictates it?"

- "Did you do that in this instance?"

- "What part of it did you prepare?"

- "In this instance did you make notes?"

- "Have you preserved those notes, the one made in this instance?"

- "Where do you keep those notes if you have preserved them in this instance?"

- "In this instance was the report that you prepared for this instance kept in risk management?"

- "[D]id you appear before a peer review committee to discuss this incident?"

- "Did you appear before the peer review committee in this instance?"

- "Did you investigate why Vision Blue was not in the Pyxis?"

- "So what mentoring did risk management do for you in this – in the interview process for this incident?"

- "Other than gathering factual information from the nurses did the report you generated do anything other than – anything else?"

- "Do you maintain a copy of the document you prepared in your offices or in the offices under your supervision and control?"

- "Did Joy Boyd interview you about this matter?"

- "Did you talk with Joy Boyd after this event occurred?"

- "At any time have you given a written statement to anyone regarding your interaction with Ms. Whitt relating to the removal of methylene blue from the Pyxis machine on May 19, 2008?"

- "Have you had an opportunity to review

> any statement that you might have –
> well, let [sic] see, have you had an
> opportunity to review any statements
> you might have given?"

The questions are not regarding the (1) proceedings of a medical review committee [or] (2) records and materials produced by a medical review committee[.]" *Woods*, 198 N.C. App. at 126, 678 S.E.2d at 792. While the questions may implicate "materials considered by a medical review committee[;]" *id.*, there is "an exception to materials which would otherwise be immune under the third category of items" for "information not generated by the committee itself but merely presented to it[.]" *Shelton*, 318 N.C. at 83-84, 347 S.E.2d at 829. To the extent that any questions Joy Boyd and Cathy Pruitt were ordered to answer were regarding information that is protected by North Carolina General Statute § 131E-95, the questions most certainly fall into the exception of the third category. *See id.* In addition, by requiring responses to written interrogatories instead of oral answers to deposition questions, the trial court gave defendant's counsel the opportunity to ensure that a witness does not inadvertently disclose information which may go beyond the scope of the question asked. Accordingly, the trial court did not err in requiring the non-privileged questions to be answered, and this argument is overruled.

V.  *In Camera* Review

Defendant Hospital next contends that "the trial court erred when it required the defendant [Hospital] . . . to produce for *in camera* inspection [of] peer review privileged documents." (Original in all caps.)  Defendant Hospital argues that the trial court should have relied upon other evidence to determine that the documents were indeed privileged, as defendant Hospital claimed they were.  Defendant Hospital cites no authority for its assertion that if a party claims that a document is privileged, then the trial court must accept this claim without reviewing the document *in camera* to make an independent legal determination of privilege.  Indeed, there is abundant authority otherwise.  *See, e.g., Bryson*, 204 N.C. App. at 535, 694 S.E.2d at 419 (noting that whether a document is privileged pursuant to North Carolina General Statute § 131E-95 is a question of law). Both the United States Supreme Court and our Supreme Court have approved *in camera* review of information which is subject to a claim of privilege:

> More than a century ago, this Court held that the responsibility of determining whether the attorney-client privilege applies belongs to the trial court, not to the attorney asserting the privilege.  Thus, a trial court is not required to rely solely on an attorney's assertion that a particular communication falls within the scope of the

attorney-client privilege. In cases where the party seeking the information has, in good faith, come forward with a nonfrivolous assertion that the privilege does not apply, the trial court may conduct an *in camera* inquiry of the substance of the communication. *See State v. Buckner*, 351 N.C. 401, 411–12, 527 S.E.2d 307, 314 (2000) (trial court must conduct *in camera* review when there is a dispute as to the scope of a defendant's waiver of the attorney-client privilege, such as would be the case when a defendant has asserted an ineffective assistance of counsel claim); *State v. Taylor*, 327 N.C. at 155, 393 S.E.2d at 807 (same); *see also Willis v. Duke Power Co.*, 291 N.C. 19, 36, 229 S.E.2d 191, 201 (1976) (trial court may require *in camera* inspection of documents to determine if they are work-product).

We note that the United States Supreme Court has also placed its imprimatur on the need for *in camera* inspections in circumstances where application of the privilege is contested. *Zolin*, 491 U.S. 554, 105 L.Ed. 2d 469 (*in camera* review to determine whether the crime-fraud exception to attorney-client privilege applies); *United States v. Nixon*, 418 U.S. 683, 41 L.Ed. 2d 1039 (1974) (*in camera* review to determine whether communications are subject to the executive privilege). The necessity for an *in camera* review of attorney-client communications in some cases is also endorsed by the Restatement of the Law Governing Lawyers: In cases of doubt whether the privilege has been established, the presiding officer may examine the contested communication *in camera*.

*In re Investigation of Death of Eric Miller*, 357 N.C. 316, 336-37, 584 S.E.2d 772, 787 (2003) (citations and quotation marks

omitted).  Although *Miller* addressed attorney-client privilege, the general principles which apply here are the same: the determination of privilege is a question of law which the trial judge must decide and *in camera* review of the evidence in question is proper.  *See generally id.*  Thus, the case law supports that on the question of privilege, the trial court certainly has an interest in ensuring that the asserted information is indeed privileged and need not rely on the word of the interested party or its counsel.  *See generally id.*

Defendant Hospital goes on to contend that the trial court's "*in camera* review has colored its reception to The Hospital's defenses in this case and, if left unchecked, will likely produce a damaging effect on Peer Review Investigations[.]"[1]  Defendant Hospital cites to portions of the trial court's statements in court that "someone is not acting reasonably," claiming that the trial court's review of the evidence caused the court to be "unmistakabl[y]" "prejudice[d]" against it.  But the trial court did not indicate *which* party may not be "acting reasonably," and even assuming *arguendo* the

---

[1] We also note that the documents which defendant Hospital claims that the trial court should not have reviewed *in camera* were not included in the record on appeal so that we could also review them *in camera*.  Presumably, defendant Hospital feared that we, like the trial court, would be unable to maintain our impartiality if we were to review these records.

trial court was implying that defendant Hospital was being unreasonable there is absolutely no evidence that the trial court made such statements because of the documents it reviewed *in camera.* Defendant Hospital "doth protest too much, methinks." William Shakespeare, *Hamlet* act 3, sc. 2.

In addition, because of their duty to rule upon claims of privilege and admissibility of evidence, it is extremely common for trial judges to acquire knowledge of evidence which is privileged, irrelevant, unfairly prejudicial, illegally gathered, or otherwise incompetent, but they also are quite accustomed to ruling upon cases without consideration of the content of any privileged or incompetent evidence previously viewed. Were we to accept defendant Hospital's argument, a trial judge would need to be recused after any *in camera* consideration of seriously damaging evidence, even if the judge determines that the evidence is protected by privilege, upon the theory that the trial judge may then be prejudiced against the party who sought to protect the evidence. There is simply no legal basis for such a claim, nor any factual basis to think that such a thing happened in this case. This argument is overruled.

## VI. Notice

Defendant Hospital next contends that "the trial court erred in holding ex parte hearings without affording the defendant [Hospital] . . . adequate notice and a meaningful opportunity to be heard." (Original in all caps.) The hearing of which defendant complains here was the 6 March 2013 hearing as to defendant Hospital's Motion for Protective Order. Yet what defendant seeks to characterize as an *ex parte* hearing without adequate notice to all parties was actually a properly noticed hearing that defendant Hospital made a deliberate choice not to attend. Even according to defendant Hospital's brief, after being notified of the time of the hearing, "[t]he Hospital undertook great efforts to inform the Court that it could not attend the 6 March 2013 hearing on its Motion[.]" Indeed, the record contains a letter from defendant Hospital's counsel noting that though aware of the hearing "none of our team is available to be heard this week. . . . For our part, we simply have other long-standing obligations in other cases in order to be ready to try this case." Defendant Hospital's "long-standing obligations in other cases" was, according to defendant Hospital, a meeting with expert witnesses at counsel's office, and use of the word "team" seems to indicate that defendant Hospital's counsel's firm does have more than one attorney.

Defendant's counsel made the decision that not even one member of the "team" could attend the hearing on 6 March 2013, and that is their prerogative, but it does not entitle them to relief. Defendant Hospital had both notice of the hearing and an opportunity to be heard; defendant Hospital just chose not to exercise the opportunity. The fact that defendant Hospital chose not to attend without filing any motion requesting a continuance or other relief, and according to its own letter instead chose to interview expert witnesses, in no way indicates a due process violation on the part of the trial court. *See generally State v. Poole*, ___ N.C. App. ___, ___, 745 S.E.2d 26, 34 ("'The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.' *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed. 2d 18, 32 (1976) (citation and quotation marks omitted)."), *disc. review denied and appeal dismissed*, ___ N.C. App. ___, 749 S.E.2d 885 (2013). Accordingly, this argument is overruled.

## VII. Sanctions

Lastly, defendant Hospital contends that "the trial court erred when it awarded attorney's fees on the plaintiff's motions to compel." (Original in all caps.) In Order 2, the trial

court stated, "Plaintiff is entitled to recover attorneys' fees and costs for bringing forward his Rule 37 Motion. The Court reserves ruling on the amount for further hearings into the time this matter required[.]"

> [A]n appeal from an award of attorneys' fees may not be brought until the trial court has finally determined the amount to be awarded. For this Court to have jurisdiction over an appeal brought prior to that point, the appellant would have to show that waiting for the final determination on the attorneys' fees issue would affect a substantial right.

*Triad Women's Ctr., P.A. v. Rogers*, 207 N.C. App. 353, 358, 699 S.E.2d 657, 660-61 (2010). As defendant Hospital failed to argue a substantial right as to attorneys' fees, we dismiss this portion of defendant Hospital's appeal as interlocutory. *See id.*

We further note that pursuant to North Carolina Rule of Appellate Procedure 34 plaintiff has also filed a motion requesting this Court to sanction defendant Hospital because defendant Hospital's appeal was frivolous. *See* N.C.R. App. P. 34. We agree that most of defendant Hospital's arguments lack legal or factual basis and believe it is appropriate to sanction defendant Hospital the cost of plaintiff's attorney's fees regarding this appeal.

> [W]e therefore tax [defendant Hospital] personally with the costs of this appeal and the attorney fees incurred in this appeal by [plaintiff]. Pursuant to Rule 34(c), we remand this case to the trial court for a determination of the reasonable amount of attorney fees incurred by [plaintiff] in responding to this appeal.

*Ritter v. Ritter*, 176 N.C. App. 181, 185, 625 S.E.2d 886, 888-89, *disc. review denied and appeal dismissed*, 360 N.C. 483, 632 S.E.2d 490 (2006).

## VIII.    Conclusion

For the foregoing reasons, we affirm and remand in part.

AFFIRMED and REMANDED in part.

Judges HUNTER, JR., Robert N. and DILLON concur.