IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA 15-1095

 Filed: 19 July 2016

Forsyth County, No. 14 CVS 7674

JOHN H. SESSIONS, Plaintiff,

 v.

MICHAEL SLOANE, TRACEY KELLY,
SUSAN EDWARDS & PHILLIP SLOANE,
as individuals, and CRUISE CONNECTIONS
CHARTER MANAGEMENT 1, LP, a North
Carolina Limited Partnership, and CRUISE
CONNECTIONS CHARTER MANAGEMENT
GP, INC., Defendants.

 Appeal by Defendants from order entered 2 June 2015 by Judge L. Todd Burke

in Forsyth County Superior Court. Heard in the Court of Appeals 30 March 2016.

 Hendrick Bryant Nerhood Sanders & Otis, LLP, by Matthew H. Bryant and
 Wyche, P.A., by Henry L. Parr, Jr. (admitted pro hac vice) and Sarah Sloan
 Batson, for plaintiff-appellee.

 Wilson, Helms & Cartledge, LLP, by G. Gray Wilson and Lorin J. Lapidus and
 Strauch Green & Mistretta, P.C., by Jack M. Strauch and Stanley B. Green, for
 defendant-appellant.

 HUNTER, JR., Robert N., Judge.

 Defendants appeal from an order compelling discovery. The trial court ordered

Defendants to produce documents withheld by the Defendants based on their

assertions that the documents were prepared in anticipation of litigation and were

therefore subject to confidentiality based on application of the attorney-client
 SESSIONS V. SLOANE

 Opinion of the Court

privilege, the work product doctrine or the joint defense privilege. After careful

examination of the record and the procedures which the Defendants used to assert

these privileges, we hold the trial court did not abuse its discretion in compelling the

production of the withheld communications.

 I. Factual and Procedural Background

 Defendants Cruise Connections Charter Management GP, Inc. (“Cruise

Corporation”) and Cruise Connections Charter Management 1 LP (“Cruise Limited

Partnership”) planned to bid $50,575,000 on a government contract with the Royal

Canadian Mounted Police (the “Mounties”) to supply three cruise ships to house

security police forces during the 2010 Winter Olympic Games. In order to show

financial strength to perform this task, bidders to the government contract had to

provide a letter of credit for ten percent (10%) of their total bid amount with their

proposal. Proposals were due on 23 May 2008. If they won, Defendants Cruise

Corporation and Cruise Limited Partnership expected to make a net profit of at least

$14,000,000.

 As of 17 May 2008, Defendants had not secured a letter of credit for ten percent

(10%) of their overall bid. Defendants asked Plaintiff Sessions to provide a letter of

credit for their bid in the amount of $5,057,500 in order to meet this bid requirement.

On 22 May 2008, Sessions agreed to provide Defendants a letter of credit in

consideration for $5,057,500 from contract proceeds should Defendants be awarded

 -2-
 SESSIONS V. SLOANE

 Opinion of the Court

the contract. Defendants signed a letter of intent agreeing to Sessions’ terms. The

letter of intent reads in part:

 In exchange for providing an unredeemable, nonpayable
 Letter of Credit in the amount of $5,057,500, Mr. Sessions
 shall be granted assignable rights to receive Warrants at
 no cost to him for special limited partnership interest in
 the Partnership which he or his assignee solely at their
 election may either cause the Partnership to redeem or
 convert to special limited partnership interests.

 If the Partnership is the successful bidder and enters into
 a contract providing services for the Royal Canadian
 Mounted Police (the “RCMP Contract”), and if Sessions or
 his assignee elects to exercise his right to receive a special
 limited partnership interest in the Partnership or demand
 that the Partnership redeem the Warrants, Sessions or his
 assignee shall receive allocations and distributions from
 the Partnership in an amount equal to the sum of (i)
 $5,057,500.00 plus (ii) two (2) times the amount of
 additional capital advanced, loaned, or provided by Mr.
 Sessions or his nominee together with the principal
 amount so advanced, loaned, or provided with his
 assistance. For example, if Sessions or his assignee
 provides $275,000 for working capital, then the original
 $275,000 is paid back plus an additional $275,000, prior to
 any distributions to the other partners of the Partnership
 or payments of any kind to the other parties to this
 agreement or to any entity in which they are associated.

 If the Partnership is the successful bidder and enters into
 the contract contemplated herein, the Partnership shall
 pay Sessions’ choice of either the redemption for special
 limited partnership interest or if the Warrants are
 exercised allocations and distributions of the amounts
 described above within 10 days after the Partnership
 receives its initial payment from the Royal Canadian
 Mounted Police or Government of Canada or the
 contracting authority whomever that should be (currently

 -3-
 SESSIONS V. SLOANE

 Opinion of the Court

 expected to be 75% of the total project fee) (the “Initial Fee
 Installment”).

 Sessions, through his company Carolina Shores Leasing LLC,1 obtained a

letter of credit from Southern Community Bank & Trust on 22 May 2008. The letter

of credit dated 22 May 2008 in the amount of $5,057,500 lists Cruise Connections

Charter as the applicant with Carolina Shores Leasing as the co-applicant, and Her

Majesty the Queen in Right of Canada as the beneficiary. Sessions transferred

$5,057,500 to the bank as security for the letter of credit and paid a fee of $25,000 to

obtain the letter of credit.

 The same day, Sloane, a partner and chief financial officer of Cruise

Connections Charter Management, hand delivered the letter of credit from Winston-

Salem, North Carolina to Seattle, Washington. Sloane gave the letter to Kelly, who

then delivered the letter of credit to Edwards in Canada. Defendant Cruise Limited

Partnership was awarded the contract on or about 30 May 2008. Subsequently,

Defendants attempted to renegotiate the agreement with Sessions, but the

agreement was not amended.

 On 26 November 2008, Cruise Limited Partnership and Cruise Corporation

filed suit against the Attorney General of Canada, representing the Mounties in

United States District Court for the District of Columbia for breach of contract

 1 Although Carolina Shores Leasing was named as the co-applicant on the letter of credit, they
are not a party to this action.

 -4-
 SESSIONS V. SLOANE

 Opinion of the Court

(hereinafter the “Canadian lawsuit”). On 9 September 2013, the Court granted

summary judgment in favor of Cruise Limited Partnership and Cruise Corporation.

On 21 July 2014, the Court entered an order for monetary damages against the

Canadian government in the amount of $19,001,077. Defendants then entered into

a settlement agreement with Canada on 12 December 2014 for the payment of

$16,900,000 by 12 January 2015.

 In the Canadian lawsuit, Defendants alleged they have no obligation to pay

Sessions. Sessions was not a party to the Canadian lawsuit. After filing the

Canadian lawsuit, all of the parties in this case entered into a forbearance and escrow

agreement. The agreement recognizes a dispute between Sessions and Cruise

Connections, but states the parties to the agreement are “willing to forbear from

enforcing or taking other action on the Claims until the Canada Lawsuit is resolved

. . . .” The parties also agreed to deposit all proceeds arising out of the Canadian

lawsuit into the trust account of Strauch Fitzgerald & Green. Thereafter, Strauch

Fitzgerald & Green would pay itself litigations costs and attorneys fees, and then

deposit thirteen percent (13%) of the net proceeds up to a maximum of $5,000,000

into an escrow account. Since the settlement agreement, Defendants have not paid

or agreed to pay Sessions.

 On 31 December 2014, Sessions filed a verified complaint and writ of

attachment seeking damages for breach of contract and injunctive relief preventing

 -5-
 SESSIONS V. SLOANE

 Opinion of the Court

the parties or their agents from disbursing the escrow funds pende lite. This

complaint named the following as parties: Michael Sloane, Tracy Kelly, Susan

Edwards, and Phillip Sloane in their individual capacities as well as Cruise

Connections Charter Management 1, LP and Cruise Corporation as Defendants. The

complaint also named as parties Strauch Green & Mistretta, a North Carolina law

firm, as the settlement and escrow agent. Kelly, Sloane, and Edwards are partners

in Cruise Limited Partnership, and Sloane is Cruise Limited Partnership’s chief

financial officer. In his complaint, Sessions claims the Defendants anticipatorily

repudiated the contract and sought damages in excess of $25,000.

 Sessions sought a writ of attachment alleging some Defendants are out of state

residents and would likely remove the escrow money from North Carolina upon

payment by the Canadian government. Sessions sought the writ to prohibit Strauch,

Green, & Mistretta, Defendants’ counsel, from disbursing the funds in an amount

that would leave less than $5,457,500 in its trust account. Attached to the complaint,

Sessions provided a copy of P. Sloane’s affidavit dated 15 January 2013 from the

Canadian lawsuit. The affidavit stated the following:

 5. When Cruise Connections approached Mr. Sessions,
 another individual who was supposed to provide a letter of
 credit for the bid had just backed out, and the deadline for
 submitting the bid was fast approaching. Mr. Sessions
 knew that Cruise Connections was in a bad bargaining
 position, since Cruise Connections had no other viable
 alternatives for getting a letter of credit before its bid was
 due. Mr. Sessions took advantage of the situation,

 -6-
 SESSIONS V. SLOANE

 Opinion of the Court

 repeatedly raising the price for providing the letter of
 credit until he eventually demanded a price equal to the
 amount of the letter of credit ($5,057,500). Since we were
 out of time and out of options, Cruise Connections acceded
 to Mr. Sessions’ demand. Given the fact that Mr. Sessions
 used his vastly superior bargaining position to force these
 unfair terms upon Cruise Connections, I have serious
 doubts as to the enforceability of the Letter of Intent.

 6. Even if it is ultimately enforceable, the Letter of Intent
 does not create a debt obligation on the part of Cruise
 Connections. Instead, if Cruise Connections’ bid was
 successful, Mr. Sessions was to be granted an option to
 receive a limited partnership interest, pursuant to which
 he would be able to receive funds in the form of partnership
 distributions. Cruise Connections did not intend to make
 distributions to partners until such time as it had
 confirmed that there was sufficient cash available to cover
 any current or future costs or other financial obligations
 related to the Vancouver Olympic project, so any
 partnership distributions would have only been
 distributions of profits. If Cruise Connections’ bid was not
 accepted, or Cruise Connections ultimately did not realize
 a profit, then Mr. Sessions would have recovered nothing.

 7. Aside from providing the letter of credit that Cruise
 Connections submitted to the RCMP in conjunction with
 its bid, John Sessions provided no other capital or other
 financing to Cruise Connections, including working
 capital, so Cruise Connections owed Mr. Sessions no debt
 whatsoever.

 On 27 January 2015, Sessions filed a Rule 41 voluntary dismissal with

prejudice as to all claims against Strauch Green & Mistretta. On 13 March 2015,

Defendants M. Sloane, Cruise Limited Partnership, and Cruise Corporation filed an

unverified answer generally denying Sessions is entitled to any relief. Additionally,

 -7-
 SESSIONS V. SLOANE

 Opinion of the Court

Defendants raised fifteen affirmative defenses including failure of consideration,

indefiniteness, unconscionability, mutual mistake, duress, and estoppel.

 On 19 March 2015, Sessions served identical sets of written discovery requests

on each defendant. As an example, Sessions requested all “documents sent to,

received from, or concerning John Sessions.” Defendants objected, stating:

 Defendant objects to this request to the extent it calls for
 documents containing information protected from
 disclosure pursuant to the work product doctrine or the
 attorney opinion work product doctrine. Defendant further
 objects to this request to the extent it calls for documents
 containing information protected from disclosure pursuant
 to the attorney-client privilege or joint defense privilege.
 Without waiving any of its objections, Defendant will
 produce non-privileged documents responsive to this
 request.

Defendants responded with similar objections to Sessions’ other discovery requests.

 On 30 March 2015, Defendants M. Sloane, Cruise Limited Partnership, and

Cruise Corporation filed an amended answer and motion to dismiss alleging three

additional defenses: Sessions’ claims are barred by the doctrine of accord and

satisfaction, novation, and the statute of limitations. On 1 April 2015, Defendants

Kelly, Edwards, and P. Sloane filed an unverified answer generally denying they owe

Sessions money.

 Cathy Holleman, a paralegal at Strauch Green & Mistretta, mailed a privilege

log to Sessions’ counsel on 16 April 2015. The privilege log listed documents

requested in discovery and the associated privilege Defendants invoked in response

 -8-
 SESSIONS V. SLOANE

 Opinion of the Court

to the request to produce that document. Below is a representative sample of the

privilege log.

 Document Document Author Recipient Description Privilege
 Number Date

 CCPRIV000016 6-09-08 Tracey Defendants Email Work
 Kelly created in Product
 anticipation Doctrine;
 of litigation Joint
 and legal Defense
 advice Privilege
 CCPRIV000019 6-09-08 Tracey Defendants Email Work
 Kelly created in Product
 anticipation Doctrine;
 of litigation Joint
 and legal Defense
 advice Privilege
 CCPRIV000020 5-15-08 Phillip Defendants Email Attorney-
 Sloane and Jack seeking or Client
 Strauch containing Privilege
 legal advice
 CCPRIV000021 5-18-08 Phillip Jack Email Attorney-
 Sloane Strauch seeking or Client
 containing Privilege
 legal advice
 On 15 May 2015, Sessions filed a motion to compel Defendants to provide full

and complete responses to Sessions’ discovery requests pursuant to Rules 34 and 37

of the North Carolina Rules of Civil Procedure. In his motion, Sessions requested the

trial court to order Defendants to produce the following:

 (1) To produce all the documents or portions thereof
 withheld from production solely based on a claim of “work
 product/joint defense privilege” where the items are

 -9-
 SESSIONS V. SLOANE

 Opinion of the Court

 communications solely among the defendants themselves
 without the participation of counsel.

 (2) In the alternative to item one, to provide the Court for
 in camera review [of] the documents, or portions thereof,
 that Defendants have withheld based on a claim of
 privilege under the “work product doctrine,” even though
 (a) no attorney was involved in creating the information
 withheld and (b) the documents were created long before
 there was any hint of litigation between Plaintiff Sessions
 and the defendants. The in camera review would allow the
 Court to determine whether these documents or portions
 thereof may properly be withheld from plaintiff . . . .

 (3) Produce to plaintiff the “To, From, CC, BCC, and
 Subject” lines of the documents or portions thereof that
 Defendants have withheld based on attorney client
 privilege, so that the Plaintiff may make his own
 independent assessment as to the validity of the claim of
 privilege . . . .

 (4) Pay plaintiff his reasonable expenses incurred in
 obtaining these orders, including attorney’s fees, as
 provided in Rule 37(a)(4) of the North Carolina Rules of
 Civil Procedure.

Attached to the motion to compel, Sessions attached eight emails or email chains

partially withheld under the work product doctrine as examples of illegitimate use of

the work product doctrine. For example, in an email from Edwards to Kelly dated 16

July 2008, the email provided to Sessions read:

 Subject: Tried Calling

 HI
 Back from the Tribunal and have tried calling, no luck.

 - 10 -
 SESSIONS V. SLOANE

 Opinion of the Court

 1. So I would not send the email I just sent – but it needs
 to be said. We need support on this team and to not
 question performance.

 2. How was the Bank mtg. Very keen to hear.

 [Redacted]

 Cheers, Sue

Another email to Edwards from Kelly dated 22 September 2008 read:

 Subject: Throwing it out there….

 Hi Tracey/Mike:
 I suspect that we can prioritize the #’s so that the Partners
 and all Subcontractor needs can be met.

 Priorities:

 [Redacted]
 493,125 RBC
 Partner Lump Sum
 [Redacted]
 1,200. Cardinal Law
 6,450. Insurance
 8,000. Port Agent
 30,000 Partner draw per month

 574,025 as opposed to: 670,575

 [Redacted] At that time, all other Sub-Contractors can be
 deposited with.

 Therefore, I see the opportunity to allow the Partners a
 lump sum draw immediately.
 Amount??

 Sue

 - 11 -
 SESSIONS V. SLOANE

 Opinion of the Court

 In response to Sessions’ motion to compel, Defendants provided an affidavit of

Kelly dated 27 May 2015. In his affidavit, Kelly stated he and his partners exchanged

“several” drafts of a potential agreement with Sessions. Kelly and his partners “hired

Will Joyner and Jack Strauch of Womble Carlyle Sandridge & Rice, PLLC to

represent [them] with regard to, among other things, potential litigation related to

the third party who had reneged on the financing deal as well as the negotiations

with Mr. Sessions.” The parties exchanged emails with red-lined changes to the

document until, at approximately 1:35 p.m. on 21 May 2008, Sessions emailed Kelly

and his partners a version of the document with no added red-lined changes. Sessions

indicated the agreement needed to be signed “immediately” in order to obtain a letter

of credit the same day. Kelly signed the agreement. Upon review of the document,

Kelly found “wholesale changes to the material terms of the proposed agreement from

the version that had been circulated earlier.” As a result, Kelly believed litigation

over the document was possible. Kelly and his partners “began to focus on the

Sessions’ dispute as well as legal strategy regarding the dispute in or around June 9,

2008.”

 The trial court held a hearing on the motion 1 June 2015. Because there was

no court reporter present at the hearing, a transcript is not included in the record.

Instead, the parties provide a summary of the hearing in the record on appeal. On 2

June 2015, the trial court granted in part and denied in part Sessions’ motion to

 - 12 -
 SESSIONS V. SLOANE

 Opinion of the Court

compel. The court ordered Defendants produce the following on or before 9 June

2015:

 (1) Produce to plaintiff all the documents or portions
 thereof withheld from production based on a claim of “work
 product doctrine, joint defense privilege” where the items
 are communications involving the defendants themselves
 without the participation of counsel.

 (2) Produce to plaintiff the “To, From, CC, BCC, and
 Subject” lines of the documents or portions thereof that
 Defendants have withheld based on attorney client
 privilege, so that the Plaintiff may make his own
 independent assessment as to the validity of the claim of
 privilege.

 On 11 June 2015, Sessions’ counsel emailed Cecilia Gordon, the trial court

administrator, asking for a meeting with Judge Burke and asking about a motion for

reconsideration filed by Defendants. In response, Gordon wrote: “Pursuant to

conversation with Judge Burke, will not hear Mr. Greene’s motion for reconsideration

and advise that he comply with the court’s ruling. Should Mr. Greene not comply he

may be subject to the contempt power of the court. Judge Burke is not available to

meet with parties.”

 Defendants timely filed a Notice of Appeal from the order granting in part and

denying in part Sessions’ motion to compel. Pursuant to Rule 62 of the North

Carolina Rules of Civil Procedure, Defendants filed a motion to stay the enforcement

of the order granting in part and denying in part the motion to compel. On 29 June

2015, the trial court granted the stay pending disposition of the appeal of that order.

 - 13 -
 SESSIONS V. SLOANE

 Opinion of the Court

 On 15 July 2015, Defendants filed a motion for a protective order with the trial

court pursuant to Rule 26 of the North Carolina Rules of Civil Procedure and N.C.

Gen. Stat. § 1-294, requesting the court enter a protective order staying the noticed

depositions of Defendants. Defendants argued the subject matter of the depositions

would be tangled with matters involved in the order on appeal to this Court. The

trial court allowed Defendant’s motion for a protective order, staying depositions

pending disposition of the appeal. The court ordered Defendants to pay any

cancellation fees, including air fare, related to the stay of the depositions.

 In this Court, on 21 December 2015, Sessions filed a motion to dismiss the

appeal for lack of jurisdiction alleging the order appealed is interlocutory and does

not affect a substantial right. Defendants filed a response to the motion to which

Sessions filed a reply brief on the motion. Defendants filed a motion to strike

Sessions’ reply brief. Both the motion to dismiss and the motion to strike were

referred to this panel.

 II. Jurisdiction

 An interlocutory order is an order made “during the pendency of an action”

which does not dispose of the entire case, but instead requires further action by the

trial court. Duquesne Energy, Inc. v. Shiloh Indus. Contractors, 149 N.C. App. 227,

229, 560 S.E.2d 388, 389 (2002). Generally, interlocutory orders are not immediately

appealable. Id. The purpose behind preventing interlocutory appeals is to prevent

 - 14 -
 SESSIONS V. SLOANE

 Opinion of the Court

undue delay in the administration of justice by allowing fragmented and premature

appeals. Sharpe v. Worland, 351 N.C. 159, 161, 522 S.E.2d 577, 578–579 (1999)

(citing Bailey v. Gooding, 301 N.C. 205, 209, 270 S.E.2d 431, 434 (1980)).

 However, an interlocutory order is immediately appealable “(1) if the trial

court has certified the case for appeal under Rule 54(b) of the Rules of Civil Procedure;

and (2) when the challenged order affects a substantial right of the appellant that

would be lost without immediate review.” Campbell v. Campbell, __ N.C. App. __, __,

764 S.E.2d 630, 632 (2014) (citations and quotations omitted). An order compelling

discovery is interlocutory in nature and is usually not immediately appealable

because such orders generally do not affect a substantial right. Sharpe, 351 N.C. at

163, 522 S.E.2d at 579 (citing Mack v. Moore, 91 N.C. App. 478, 480, 372 S.E.2d 314,

316 (1988)). When “a party asserts a statutory privilege which directly relates to the

matter to be disclosed under an interlocutory discovery order, and the assertion of

such privilege is not otherwise frivolous or insubstantial, the challenged order affects

a substantial right.” Id. at 162, 522 S.E.2d at 579. This Court has applied the

reasoning of Sharpe to include attorney-client privilege, the work product doctrine,

and the common interest or joint defense doctrine. See K2 Asia Ventures v. Trota,

215 N.C. App. 443, 446, 717 S.E.2d 1, 4 (2011); Cf. Nationwide Mut. Fire Ins. Co. v.

Bourlon, 172 N.C. App. 595, 601, 617 S.E.2d 40, 44 (2005) (denying defendant’s

motion to dismiss as interlocutory and reviewing order compelling discovery

 - 15 -
 SESSIONS V. SLOANE

 Opinion of the Court

involving claims of attorney-client privilege and a tripartite attorney-client

relationship).

 Here, Defendants asserted attorney-client privilege, the work product doctrine,

and the joint defense privilege at the hearing in response to the motion to compel

discovery. If the assertion of privilege is not “frivolous or insubstantial” then a

substantial right is affected and the order compelling discovery is immediately

appealable. A blanket, general objection is considered to be frivolous or insubstantial,

but objections “made and established on a document-by-document basis” are

sufficient to assert a privilege. See K2 Asia Ventures, 215 N.C. App. at 447–448, 717

S.E.2d at 4–5. Defendants provided a document privilege log describing the privilege

relating to each withheld document. As a result, their assertion of privilege is not

frivolous or insubstantial and a substantial right is affected. We therefore hold this

interlocutory order is immediately appealable. We deny Sessions’ motion to dismiss

the appeal based on its interlocutory nature.

 Sessions submitted to this Court a reply brief in support of his motion to

dismiss Defendants’ appeal, and Defendants thereafter filed a motion to strike

Sessions’ reply brief. Defendants contend, pursuant to Rule 37(b) of the North

Carolina Rules of Appellate Procedure, a motion may “be acted upon at any time,

despite the absence of notice to all parties.” However, the Rule refers to this Court’s

ability to act upon a motion at any time, not the ability of a party to do so. Although

 - 16 -
 SESSIONS V. SLOANE

 Opinion of the Court

Rule 28(h) of the North Carolina Rules of Appellate Procedure permits a party to file

reply briefs in certain circumstances, Rule 37, which governs motions, does not

expressly allow reply briefs. Sessions provides no additional authority to support his

ability to file a reply brief to a motion and therefore we decline to consider his reply

brief to the motion to dismiss.

 III. Standard of Review

 “Whether or not the party’s motion to compel discovery should be granted or

denied is within the trial court’s sound discretion and will not be reversed absent an

abuse of discretion.” Patrick v. Wake Cnty. Dep’t of Human Servs., 188 N.C. App. 592,

595, 655 S.E.2d 920, 923 (2008). We also review the trial courts’ application of the

work product doctrine and of attorney-client privilege under an abuse of discretion

standard. Hammond v Saini, 229 N.C. App. 359, 370, 748 S.E.2d 585, 592 (2013);

Evans v. United Services. Auto. Ass’n, 142 N.C. App 18, 27, 541 S.E.2d 782, 788

(2001). Under an abuse of discretion standard, this Court may only disturb a trial

court’s ruling if it was “manifestly unsupported by reason or so arbitrary that it could

not have been the result of a reasoned decision.” Hammond, 229 N.C. App. at 370,

748 S.E.2d at 592 (quoting K2 Asia Ventures, 215 N.C. App. at 453, 717 S.E.2d at 8).

 IV. Analysis

 Generally, parties may obtain discovery “regarding any matter, not privileged,

which is relevant to the subject matter involved in the pending action.” N.C. Gen.

 - 17 -
 SESSIONS V. SLOANE

 Opinion of the Court

Stat. § 1A-1, Rule 26(b)(1) (2015). If a party claims a document is privileged, the

burden lies with that party to “(i) expressly make the claim and (ii) describe the

nature of the documents, communications, or tangible things not produced or

disclosed, and do so in a manner that, without revealing information itself privileged

or protected will enable other parties to assess the claim.” See N.C. Gen. Stat. § 1A-

1, Rule 26(b)(5)(a) (2015).

 A. Determination of Validity

 When this motion came on for hearing, Judge Burke had Defendants’ privilege

log and the Kelly affidavit before him. According to Defendants, at the hearing on

the motion, Defendants orally requested an in camera review but did not tender to

Judge Burke the documents to be examined. Lacking the documents, the only

evidence before Judge Burke was the privilege log which on its face lacked sufficient

evidence for the trial court to assess their claim of privilege. In their brief,

Defendants argue the trial court failed to make necessary determinations as required

by Hall v. Cumberland County Hospital System, Inc. 121 N.C. App. 425, 466 S.E.2d

317 (1996). They contend a finding of validity of their Rule 26 claim is mandatory

and should have been included in the order for the order to be legally enforceable.

Appellants read Hall to say the motion, affidavit, and privilege log alone are sufficient

to support a finding of validity of their Rule 26 claim. Defendants contend an in

camera review should occur following a determination of validity. We disagree.

 - 18 -
 SESSIONS V. SLOANE

 Opinion of the Court

 The Rules of Civil Procedure are not so clear. The better practice in privilege

controversies would be to submit a motion, affidavit, privilege log, request for findings

of fact and an in camera review together with a sealed record of the documents to be

reviewed. Defendants concede they made no formal request for in camera review.

Using the method followed by Defendants, if the trial court has questions regarding

the factual basis of the alleged privileged documents, the court would not have a basis

to resolve its questions. Lacking the documents, there is no evidence to determine if

the claims of privilege are bona fide. Moreover, if the documents are not provided

under seal to this Court for our review, appellants run the risk of providing

insufficient evidence for this Court to make the necessary inquiry. It is therefore

problematic for the Defendants to meet their burden of proof at trial or on appeal.

 B. Joint Defense Privilege and Work Product Doctrine

 Defendants argue the trial court did not make a finding whether the

documents withheld under the work product doctrine or joint defense privilege were

prepared in anticipation of litigation. Instead, the trial court summarily ordered the

production of all documents where the communications involve the Defendants

themselves without participation of counsel. Citing Evans v. United Servs. Auto

Ass’n, 142 N.C. App. 18, 541 S.E.2d 782 (2011), Defendants contend the work product

doctrine does not require “direct involvement of an attorney” to apply.

 - 19 -
 SESSIONS V. SLOANE

 Opinion of the Court

 The joint defense privilege, also known as the common interest doctrine, takes

the attorney-client privilege and extends it to other parties that “(1) share a common

interest; (2) agree to exchange information for the purpose of facilitating legal

representation of the parties; and (3) the information must otherwise be confidential.”

Friday Investments, LLC v. Bally Total Fitness of the Mid-Adlantice, Inc., __ N.C.

App. __, __, __ S.E.2d __, __ (2016). Thus, the joint defense privilege is not actually a

separate privilege, but is instead an exception to the general rule that the attorney-

client privilege is waived when the client discloses privileged information to a third

party. Id. It is generally recognized when parties communicate to form a joint legal

strategy. Id.

 The work product doctrine protects materials prepared in anticipation of

litigation from discovery. In re Ernst & Young, 191 N.C. App. 668, 678, 663 S.E.2d

921, 928 (2008). Materials prepared in the regular course of business are, however,

not protected. Cook v. Wake Cnty. Hosp. Sys., Inc., 125 N.C. App. 618, 623, 482 S.E.2d

546, 550 (1997). The test for whether a document was prepared in anticipation of

litigation or in the regular course of business is:

 whether, in light of the nature of the document and the
 factual situation in the particular case, the document can
 fairly be said to have been prepared or obtained because of
 the prospect of litigation. But the converse of this is that
 even though litigation is already in prospect, there is no
 work product immunity for documents prepared in the
 regular course of business rather than for purposes of the
 litigation.

 - 20 -
 SESSIONS V. SLOANE

 Opinion of the Court

Id. at 624, 482 S.E.2d at 551 (emphasis removed).

 Pursuant to Rule 52 of the North Carolina Rules of Civil Procedure “[f]indings

of fact and conclusions of law are necessary on decisions of any motion or order ex

mero motu only when requested by a party and as provided by Rule 41(b).” N.C. Gen.

Stat. § 1A-1, Rule 52 (a)(2) (2015). Rule 41, governing dismissal of claims, does not

apply to this case. See N.C. Gen. Stat. § 1A-1, Rule 41 (2015). If the trial court is not

required to make findings of fact and conclusions of law and does not do so, then we

presume the trial court found facts sufficient to support its judgment. Estrada v.

Burnham, 316 N.C. 318, 324, 341 S.E.2d 538, 542 (1986) (citations omitted).

Although findings of fact and conclusions of law are helpful for meaningful review by

our appellate courts, if a party did not request the court to make findings of fact, then

it is within the discretion of the trial court whether to make findings. Evans, 142

N.C. App. at 26–27, 541 S.E.2d at 788; Watkins v. Hellings, 321 N.C. 78, 82, 361

S.E.2d 568, 571 (1987).

 The burden at trial rests on the party claiming privilege under the work

product doctrine to show the emails were prepared in anticipation of litigation instead

of in the regular course of business. Evans, 142 N.C. App. at 28–29, 541 S.E.2d at

789–790. And, “[b]ecause work product protection by its nature may hinder an

investigation into the true facts, it should be narrowly construed consistent with its

purpose.” Id. at 29, 541 S.E.2d at 789.

 - 21 -
 SESSIONS V. SLOANE

 Opinion of the Court

 The record on appeal lacks a transcript from the hearing on the motion to

compel. The parties included a summary of the hearing, but the summary does not

mention a request for factual findings. Additionally, the record contains no response

to the motion to compel other than Kelly’s affidavit. As a result, there is no evidence

in the record that indicates Defendants requested the trial court make findings of

fact. Accordingly, the trial court was not required to make findings of fact, and we

presume the trial court found facts sufficient to support its judgment. The trial court

did not abuse its discretion by failing to make findings of fact regarding whether the

documents at issue were prepared in anticipation of litigation.

 While we agree with Defendants that the work product doctrine does not

require the direct involvement of an attorney to apply, the work product doctrine does

require documents be prepared in anticipation of litigation instead of in the regular

course of business. The burden rested on Defendants in the trial court to demonstrate

the documents in question fell within the shield of the work product or joint defense

doctrines. To meet their burden, Defendants needed to show the documents were

prepared in anticipation of litigation. In opposition to the motion to compel,

Defendants produced only Kelly’s affidavit. The affidavit established Defendants’

anticipated litigation as of the dates of the emails at issue. However, Defendants did

not meet their burden to show the specific emails at issue were actually prepared or

obtained because of the prospect of litigation. Defendants did not demonstrate the

 - 22 -
 SESSIONS V. SLOANE

 Opinion of the Court

emails were exchanged for the purpose of pending litigation instead of during the

regular course of business. Although Defendants provided evidence to show litigation

was anticipated at the time of the email exchanges, any business-related

communication during that time is not protected. Defendants did not meet their

burden to show the communications “can fairly be said to have been prepared or

obtained because of the prospect of litigation.” See Cook, 125 N.C. at 624, 482 S.E.3d

at 551.

 Defendants could have met their burden by showing the documents were

prepared in anticipation of litigation. Defendants should have given the trial court

more information about the nature of the withheld documents and the factual

situation surrounding them instead of a broad claim of privilege. The best practice

would have been for Defendants to turn over the documents to the trial court for an

in camera review. On the facts before us, we hold the trial court did not abuse its

discretion by ordering Defendants to produce the emails at issue under the work

product and joint defense doctrines.

 C. Attorney-Client Privilege

 Attorney-client privilege is based upon the reasoning that “full and frank”

communications between a client and his attorney allow the attorney to best

represent his client. In re Miller, 357 N.C. 316, 329, 584 S.E.2d 772, 782 (2003)

(quoting Upjohn Co. v. United States, 449 U.S. 383, 389, 66 L.Ed.2d 584, 591 (1981)).

 - 23 -
 SESSIONS V. SLOANE

 Opinion of the Court

The privilege is rooted in the English common law, with its earliest recorded instance

in 1577. See generally Berd v. Lovelace, 21 Eng. Rep. 33 (1577). Today, the attorney-

client privilege protects “all confidential communications made by the client to his

attorney.” Dickson v. Rucho, 366 N.C. 332, 737 S.E.2d 362 (2013) (citations omitted).

“When the relationship of attorney and client exists, all confidential communications

made by the client to his attorney on the faith of such relationship are privileged and

may not be disclosed.” In re Miller, 357 N.C. at 328, 584 S.E.2d 782 (citations

omitted). The burden lies with the party claiming attorney-client privilege to

establish each essential element of the privilege. Id. at 336, 584 S.E.2d at 787. The

Supreme Court of North Carolina recognizes a five-part test to determine whether

the privilege applies to a certain communication:

 (1) the relation of attorney and client existed at the time
 the communication was made, (2) the communication was
 made in confidence, (3) the communication relates to a
 matter about which the attorney is being professionally
 consulted, (4) the communication was made in the course
 of giving or seeking legal advice for a proper purpose
 although litigation need not be contemplated and (5) the
 client has not waived the privilege.

Id. at 335, 584 S.E.2d at 786.

 Defendants challenge the trial court’s order as it relates to 80 emails between

Defendants and their attorneys. The trial court ordered Defendants to produce the

“To, From, CC, BCC, and Subject lines” of the emails withheld by Defendants on the

basis of attorney-client privilege. Defendants contend revealing the subject lines of

 - 24 -
 SESSIONS V. SLOANE

 Opinion of the Court

the emails will reveal protected information. Quoting a case from Illinois, Defendants

state: “Header information may contain information subject to the attorney-client

privilege or the work product doctrine.” Shuler v. Invensys Bldg. Sys. Inc., 2009 U.S.

Dist. LEXIS 13067 (N.D. Ill. 2009).

 After reviewing the relevant case law, we believe the question of whether

subject lines of emails must be protected from discovery under attorney-client

privilege is a question of first impression in North Carolina. However, just because

the form of the document or communication is new or different does not mean we

must look outside our jurisdiction for authority. We hold the same five-part test

applies for the subject line of an email as it does for any communication allegedly

protected under attorney-client privilege.

 Defendants bear the burden of establishing each essential element of the

privilege pursuant to the five-part test recognized by our Supreme Court. To support

their claim of privilege, Defendants produced a privilege log containing the document

dates, authors, recipients, a description, and the privilege asserted. Descriptions of

the withheld emails include the following: “email created in anticipation of litigation”

and “email seeking or containing legal advice.” The record provides no evidence

Defendants met their burden at trial to show the subject lines of the emails contained

privileged information by meeting the test. The record only reflects Defendants

claimed the emails, including their subject lines, are protected by attorney-client

 - 25 -
 SESSIONS V. SLOANE

 Opinion of the Court

privilege. Accordingly, the trial court did not abuse its discretion by requiring

Defendants to produce the subject lines of the emails.

 D. In Camera Review

 Finally, Defendants contend the trial court should have conducted an in

camera review prior to issuing its order compelling discovery. However, the decision

whether to conduct an in camera review to determine whether documents are

shielded from discovery by the assertion of a privilege is within the sound discretion

of the trial court. See Midgett v. Crystal Dawn Corp., 58 N.C. App. 734, 736, 294

S.E.2d 386, 387 (1982).

 Based on the record before us, we see no evidence Defendants made a request

for an in camera inspection of the documents at trial or submitted the documents for

inspection. We note that Plaintiff Sessions did make a request for an in camera

inspection but this was only requested in the alternative in the event that the court

did not rule that the documents were privileged. The decision to conduct an in camera

inspection, without a request for such inspection, lies within the discretion of the trial

court, and we have no record evidence Defendants requested an in camera inspection.

Unless the court is given the documents to inspect, Defendants will have difficulty

meeting their burden to show any specific emails were prepared or obtained because

of the prospect of litigation. Defendants took a strategic risk in not submitting the

documents to be sealed for in camera review.

 - 26 -
 SESSIONS V. SLOANE

 Opinion of the Court

 V. Conclusion

 For the foregoing reasons, we hold the trial court did not abuse its discretion

by ordering Defendants to produce documents or portions thereof. We therefore

affirm the trial court’s order.

 AFFIRMED.

 Judges ELMORE and DAVIS concur.

 - 27 -